# Thompson's Appeal.

103　603
f221　³400

1. The Act of March 29th 1832 (P. L. 190), confers upon the Orphans' Court the power to direct an issue to the Common Pleas, but the exercise of this power is left to the discretion of the court.

2. An appeal from the action of the Orphans' Court, on its refusal of a motion for an issue, cannot be maintained.

3. A court ought not to set aside the conclusions of a master or auditor upon the facts of a case submitted to him, except upon the discovery of some plain and obvious error, or where the whole evidence shows such a preponderance against his findings, that, were it a verdict of a jury in a court of common pleas, a new trial ought to be granted. The facts in this case held not to warrant such action by the court.

4. Where a testator left his daughter A., a legacy, which she assigned to B., and the executors refused to pay the same to B. on the ground that the assignment was fraudulent and void, and B., through a person to whom she had assigned part of her claim, petitioned the Orphans' Court for a citation to compel the executors to file an account:

*Held*, that the Orphans' Court had jurisdiction to issue the citation, and, when the account was filed, to order distribution, determining, as between A. and B., which was entitled to the legacy.

May 15th 1883.　Before MERCUR, C. J., GORDON, PAXSON, TRUNKEY, STERRETT and GREEN, JJ.　CLARK, J., absent.

APPEAL from the Orphans' Court of *Lancaster county :* Of January Term 1883, No. 272.

Certiorari to said court, and an appeal by Josephine R. Thompson, legatee, and M. A. Herr and John Ralston, executors of William R. Ralston, deceased, from a decree confirming the report of an auditor appointed to make distribution of the balance in the hands of said executors.

Wm. R. Ralston, the testator, who died in May 1877, bequeathed to his daughter, Josephine R. Thompson, a legacy of $500.

On November 10th 1877, Mrs. Thompson executed an assignment of the said legacy, with a power of attorney for collection annexed, to Harriet B. Burner, both parties then living in Davenport, Iowa, the consideration recited being $425.

It was alleged by Mrs. Thompson and the executors, that this instrument was executed by the former for the purpose of giving Harriet Burner a power of attorney to collect the money for Mrs. Thompson, who claimed to have been at that time in an unfit condition mentally, to attend to business herself; and further, that there was no consideration paid, Mrs. Thompson not being aware that she had executed anything but a power of attorney. Harriet Burner, on the other hand, claimed that the transaction was bona fide, and in 1878, after the other legacies had been paid, demanded the $500 from the executors, who re-

[Thompson's Appeal.]

fused to pay it. She. thereupon, through J. B. Kauffman, to whom she had assigned part of her claim, presented a petition to the Orphans' Court of Lancaster county for a citation to compel the executors to file an account. · The court issued a citation, and the executors filed an answer denying the jurisdiction of the court on the ground that the citation was not asked for by any one having an interest in the estate; and alleging fraud, want of consideration for the assignment, and duress.

The court made a decree directing an account to be filed. The executors accordingly filed an account on January 25th 1879, showing a balance for distribution of $827.43.

At the instance of the petitioners, B. F. Montgomery, Esq., was appointed Auditor by the court to make distribution, and he reported as follows, as to the facts connected with the assignment:

"Josephine R. Thompson went to live with Harriet B. Burner in Davenport, Iowa, in the latter part of October 1877, and on the 10th day of November 1877, they, together with Alice Nissley, went to the law-office of Joseph A. Crawford, in Davenport [there is a dispute as to whether E. A. Bailey was there or not]; he, Crawford, drew an assignment for the legacy from Josephine R. Thompson to Harriet B. Burner. C. H. Kent, a notary public, took the acknowledgment of Josephine R. Thompson to the same, and it was witnessed by E. A. Bailey and Alice Nissley. For the purpose of setting aside the assignment, Josephine R. Thompson says in her deposition that Alice Mayberry signed the paper under a fictitious name, that of Alice Nissley; that the paper was never read to her, and that it was represented to her that it was only for the purpose of getting her the money; that she was not mentally competent to transact any business whatever, and was wholly under the influence of Harriet B. Burner. And to establish her mental condition, depositions of a number of persons were taken, varying from A. Lewis, who says her mind and health were good enough in the fall of 1877, to Dr. Shouse, who says she was not of sound mind from 1875 until the middle of November 1877, and one witness says she was not sharp, another that she talked foolish, and another that her mind was weak. A number of depositions were taken as to the character for truth and veracity of Harriet Burner, which say it is bad. E. A. Bailey says he was present at the execution of the assignment; that there were present Josephine R. Thompson, Harriet B. Burner, Crawford, and he is not sure about Kent, signed the paper as a witness, and saw some money paid about that time. Alice Fite, alias Mayberry, testified before your auditor, that Josephine R. Thompson, Harriet B. Burner, Crawford, Kent and herself were all that were present; that the paper was not read or any money paid

at the time of its execution; that she did not sign the paper. Alice Nissley said that she did not sign the paper at all. And to sustain the assignment, Harriet B. Burner, the assignee, Alice Nissley, one of the witnesses, Joseph A. Crawford, the attorney who drew the assignment, testify substantially to the same that it was made for the consideration therein mentioned; that her mind and health were good; that the paper was read to her, and the money paid. Crawford says the transaction seemed satisfactory to all the parties. Mary Jane Orndorff says Josephine R. Thompson showed her money that she said she received from Harriet B. Burner for the assignment, shortly after that time."

From this evidence—in addition to the facts, that neither the depositions of Mrs. Thompson's husband, with whom she lived until within a short time of making the assignment, nor those of her sister, both of whom lived in Davenport, were taken; and that Mrs. Thompson continued to live with Harriet Burner for ten years afterwards—the auditor found that Mrs. Thompson was mentally capable of executing the assignment, and that the transaction was bona fide. He therefore awarded the $500 to Harriet Burner, and to those persons to whom she had assigned parts of it.

To this report numerous exceptions were filed, relating chiefly to the findings of fact by the auditor, to which was added the following:

"(8.) The auditor erred in not recommending to the court an issue to try, by jury, the fact in dispute between the claimants, which the court is now respectfully asked to grant."

These exceptions were overruled by the court and a decree entered confirming the report. Whereupon Mrs. Thompson and the executors took this appeal, assigning for error, the action of the court, "in directing an account to be filed after answer to the citation, because the court had no jurisdiction;" in refusing to award an issue, and in confirming the auditor's report.

*John R. Ralston & William R. Wilson* (with whom was *S. M. Meredith*), for appellants.—The petition for a citation does not set forth that the estate is unsettled, nor does it set forth an indebtedness or liability of the estate to the petitioner. Section 57, Act 29th March 1832, requires that the petition shall set forth facts necessary to give the court jurisdiction, the specific cause of complaint, supported by oath or affirmation. The legacy was not charged upon land. The executors were liable and had provided for that liability, and the court, as well as the parties, had notice by the answer. The money had not been paid to the claimants, because of the inability on the part

[Thompson's Appeal.]

of the legatee to contract; and of fraud and want of considera-
tion on part of the claimants, three distinct allegations made by
the legatee; each of which is determinable only in a court of
common law or equity.   The Orphans' Court is neither, and it
is expressly provided by the Act creating it, that questions of
fact may be certified to the Common Pleas.

The application for an issue was properly made as it was made
under section 55, Act of 1832. There was no sale under execution
or Orphans' Court sale that required us to make the application
under Act of 20th April 1846.  A distinct allegation of fraud
being made or proved, an issue should be granted : 3 Phila. 441.
Where a question of fraud is trying and there is evidence of
fraudulent conduct on the part of the plaintiff, the court should
not decide it, but should submit the question of fraud to a jury :
McMichael *v.* McDermott, 5 H. 353; Jack *v.* Dougherty,
3 Watts 151.

*D. G. Eshleman* and *J. B. Kauffman,* for appellee.—
The finding of an auditor upon the facts, which has been
approved by the court below, will not be disturbed on appeal
except for flagrant error : Burroughs' Appeal, 2 Casey 264 ;
Miller's Appeal, 6 Casey 478 ; Dellinger's Appeal, 21 P. F. S.
425 ; Gilbert's Appeal, 28 P. F. S. 266 ; Appeals of Bedell
et al., 6 Nor. 510, 512.   The first error assigned, viz: that
" The court erred in directing an account to be filed after
answer to citation ; court had no jurisdiction," cannot be
sustained.   The testator had been dead more than a year.   No
account of his estate had been filed.  The petitioner, the appel-
lee, was entitled by assignment to a legacy under the will of
testator.   She did not know whether the estate was solvent or
not.   The proper way to ascertain that fact was by petition to
the Orphans' Court for an account. After the account was filed
her claim was disputed, and the Orphans' Court was the proper
tribunal to determine whether she was entitled to the legacy by
virtue of her assignment or not: McGettrick's Appeal, 2 Out.
12.   The court exercised their discretion in refusing to grant
an issue.   The Act of 29th March 1832, sec. 55, Purdon 1108,
authorizes the Orphans' Court to send an issue to the Common
Pleas for the trial of fact by a jury whenever they shall deem
it expedient to do so.   Granting an issue is in the discretion of
the court: Baker's Appeal, 9 P. F. S. 313.

Mr. Justice GORDON delivered the opinion of the court,
October 1st 1883.

There was in this case no application to the court below to
direct an issue, and if there had been the court might or might
not have entertained it as to it might seem proper and expe-

[Thompson's Appeal.]

dient. The Act of the 29th of March 1832, confers on the Orphans' Court the power to direct an issue to the Common Pleas, but the exercise of that power is left to the discretion of that court. Even should an issue be directed and a verdict be had thereon, that verdict is no more binding upon the court than is an Auditor's report. Whether the finding of fact be by the verdict of a jury, or by the report of an Auditor, the court is bound to revise it, and is responsible for its rectitude. So when the case comes to us we are not to inquire whether the facts have been settled by a verdict, an Auditor, or the court itself, but, in the language of the Act of the 16th of June 1836, we are to try, hear and determine the merits of such case, and to decree according to the justice and equity thereof. The idea, therefore, of an appeal from the action of the Orphans' Court, on its refusal of a motion for an issue, has no support either in the letter or reason of the law.

The complaint that the court was without jurisdiction to order the executors of William R. Ralston to file an account, and to make distribution of the balance of the estate found in their hands undisposed of cannot be sustained. The Orphans' Court certainly has jurisdiction, upon petition of any one interested, to direct either executors or administrators to file their accounts, and when such accounts are filed to order distribution to be made to those entitled, whether creditors or legatees. So also had the court the power to determine as between the legatee, in this case, and her assignee, which of the two was entitled to the legacy : McGettrick's Appeal, 2 Out. 9.

Then, as to the evidence, we fail to see that the court erred in approving the findings of the Auditor. It is hardly necessary to repeat what has been so often said, that a court ought not hastily set aside the conclusions of a Master or Auditor upon the facts of a case submitted to him. This ought to be done only upon the discovery of some plain and obvious error, or where the whole evidence shows such a preponderance against his finding, that, were it a verdict of a jury in a Court of Common Pleas a new trial ought to be granted. Here we find nothing of that kind ; the proof of insanity, or want of mental ability on part of the assignor to execute the assignment, was more than doubtful. It is true, if we were to take the evidence on part of the appellant as verity, we might be compelled to conclude that there was a manifestation of some mental aberration about the time of the execution of the paper in controversy, but this, in face of the adversary proofs produced by the appellee, we cannot do. Moreover, the prima facie presumption is in favor of her competency, and upon her devolves the task of rebutting that presumption. Of her sanity at the time of the audit there is no doubt ; her own testimony is conclusive

[Methodist Church of Columbia *v.* Old Columbia Public Ground Co.]

of this, and if she was mad at the time of the execution of the assignment, it is remarkable that neither the attorney who drew that paper, the witnesses who attested it, nor the notary public who took the acknowledgment, observed that fact. Moreover, her own uncle was at that time present for the purpose of identifying her as the proper assignor, and to him she declared, on being asked her object in making the assignment, that she was that much smarter than her brother and sister : that whilst she had got her share of the estate, they would get nothing. These circumstances would seem to clearly indicate her entire ability to dispose intelligently of her property, nor does there seem to have been a single fact apparent during the whole transaction that would indicate the contrary. We also think the Auditor was justified in finding that she received a full consideration for this assignment, and if such were the case we would not be over-nice in scrutinizing her mental condition. She may have been, as she herself says, in a weak condition when she executed the assignment; but whether weak or strong she needed the proceeds of her property for her support and maintenance, and having received them in good faith, we cannot agree to annul the contract by which they were obtained.

The appeal is dismissed, and the decree affirmed at the costs of the appellant.