## Turtle Creek Borough *v.* Pennsylvania Water Co., Appellant.

*Practice, Supreme Court—Equity practice—Findings of fact.*

1. It is not ground for reversal on findings of fact of a court of first instance that a different conclusion might have been warranted from the evidence or that the appellate court might have arrived at a different result if called upon to determine the facts as a court of first instance. The duty of the appellate court in reviewing findings of fact is to ascertain whether there was tesimony, which, if believed, would sustain the findings.

*Corporations—Water companies—Water rates—Act of April 29, 1874, P. L. 73, Sec. 34—Valuation of plant—Reasonable rates.*

2. In a suit in equity to restrain a water company from shutting off a supply of water to consumers who refused to sign contracts to pay increased rates and to have the court inquire into the reasonableness of the proposed increase of rates, under the Act of April 29, 1874, P. L. 73, Section 34, where the valuation by the court of the plant of the water company as a basis for ascertaining reasonable rates, was complained of, where it appeared that such valuation had been determined after considering all the evidence presented and there was testimony to support the conclusions of fact reached by the court below, the Supreme Court will not on appeal reverse the findings of fact of the chancellor.

3. The lower court made no error in such case in not setting out in its findings each separate item of value and taking the sum total of such separate items as the value of the plant, where in its opinion it stated that all items had been considered in fixing the value of the plant.

4. Water rates established by a court of equity under the Act of April 29, 1874, P. L. 73, Section 34, must not be confiscatory and must be such as to yield a fair return upon a just valuation of the plant. Where there is evidence to support a finding that the rates as established will yield a fair return upon the capital invested, a decree fixing such rates will be affirmed.

5. Where in such case it appeared that a proposed increase in water rates would have yielded a profit to defendant water company of 7.72 per cent. on the valuation of the plant as alleged by the defendant, the court made no error in establishing a rate sufficient to yield a return of not less than six per cent. upon the valuation of the plant as fixed by the court.

*Equity practice—Taxpayers' bills—Parties entitled to relief—Refund of water rates paid.*

6. Where the bills were filed in such case by various boroughs and by two citizens and taxpayers of each borough on their own behalf and on behalf of other citizens who were consumers of water, the court made no error in assuming jurisdiction with respect to the general subject under consideration and in decreeing that the water company should refund what it had collected in excess of a reasonable rate to persons who were not named as parties plaintiff in the bills, but who were in like situation with the individual plaintiffs.

Argued Oct. 31, 1913. Appeals, Nos. 82, 83, 84, 85, 86, 87, 88 and 89, Oct. T., 1913, by defendant, from decree of

C. P. Allegheny Co., at Nos. 132 Aug. T., 1911; 235 Feb. T., 1912; 278 Feb. T., 1912; 258 Feb. T., 1912; 300 Feb. T., 1912; 318 Feb. T., 1912; 257 Feb. T., 1912; and 1084 April T., 1912, upon bill in equity in cases of Borough of Turtle Creek, et al., v. Pennsylvania Water Company; Borough of East Pittsburgh, et al., v. Pennsylvania Water Company; Borough of North Braddock, et al., v. Pennsylvania Water Company; Borough of Swissvale, et al., v. Pennsylvania Water Company; Borough of Pitcairn, et al., v. Pennsylvania Water Company; Borough of Wilkinsburg, et al., v. Pennsylvania Water Company; Borough of Edgewood, et al., v. Pennsylvania Water Company; Borough of Wilmerding, et al., v. Pennsylvania Water Company. Before FELL, C. J., BROWN, POTTER, ELKIN and MOSCHZISKER, JJ. Affirmed.

Bill in equity for an injunction to restrain a water company from charging unreasonable rates. Before MILLER, J., specially presiding.

The facts appear by the opinion of the Supreme Court, and by the following opinion of MILLER, J., specially presiding, and SWEARINGEN, J., sur exceptions to the findings of fact and conclusions of law of the trial judge:

The various boroughs in the various cases are municipal corporations, and the various individuals named in each bill are citizens and taxpayers of their respective boroughs and are together customers and users of water in said borough supplied by the Pennsylvania Water Company, defendant; this defendant is a public service corporation under the laws of Pennsylvania for the purpose of supplying and distributing water to domestic and other consumers; in most of these boroughs ordinances were duly enacted upon the acceptance of which the defendant company or its predecessors, entered upon the streets of the boroughs, laid mains and pipes and made attachments for the purpose of supplying water to said boroughs and the inhabitants; under these ordinances and by virtue of the power conferred upon the

defendant company and its predecessors by the laws of the Commonwealth, water has been supplied to the said boroughs and the inhabitants up to the present time; in the ordinances, especially in the Borough of Wilkinsburg and the Borough of Turtle Creek cases, a provision was contained that the rates charged for domestic purposes should not exceed the rates for the same service then in existence in the City of Pittsburgh; these rates as affected by meter were not to exceed twenty cents per thousand gallons for domestic consumers; to what these meter rates were specially applicable is more fully set forth in the next finding of fact; from the time when operation began and water was supplied to the boroughs and inhabitants thereof, whether by ordinances or otherwise, up to January 1, 1911, the rates did not exceed twenty cents per thousand gallons.

By various considerations and mergers the Pennsylvania Water Company acquired control of different water companies furnishing water in the eight boroughs, plaintiffs in these bills, and in a number of townships adjacent to said boroughs, and in the Thirteenth Ward of the City of Pittsburgh; at the time of the passage of the ordinance referred to the rates in force in the City of Pittsburgh for domestic and other various miscellaneous purposes were flat rates; the provisions in force with reference to meter rates are as follows:

"All establishments, such as manufactories, pickle and vinegar works, hotels, livery stables, breweries, bottling houses, other large consumers, including also hydraulic elevators, and watermotors, may be supplied at the flat meter rates instead of the rates hereinbefore provided."

This provision seemed not to relate to meter rates for domestic and other small consumers.

On January 1, 1911, the Pennsylvania Water Company, defendant, increased its rates for supplying water to domestic consumers in the various boroughs and districts to 33½ cents per thousand gallons, by meter in

quantities less than 150,000 gallons per annum, and has since been charging said rates for water furnished to domestic consumers; this increase of rates was made part of a written application to be executed by domestic consumers with a statement that unless complied with the supply of water to the domestic consumers would cease.

The consumers of the defendant company fall into three classes, namely; domestic, industrial, and municipal; in the middle class are manufacturing concerns, among others the Westinghouse Electric & Manufacturing Company, Westinghouse Machine Company, Westinghouse Air Brake Company, Union Switch & Signal Company, and others, who have been supplied with water under special contracts; to these industrial consumers, during the year 1911, out of a total pumpage of 2,065,991,047 gallons of water there has been furnished 1,317,444,742 gallons; during the same period there was supplied to domestic consumers out of the total pumpage above set forth, 722,204,250 gallons; the inhabitants of the various boroughs are included in the classification known as domestic consumers.

The rates under special contracts charged to the industrial consumers are small and differ in price, a few of which are as follows: To the various Westinghouse companies, including the Pittsburgh Meter Company, a maximum of five and two-tenths cents per thousand gallons, and a minimum of four cents per thousand gallons; to the Trafford Water Company, four cents per thousand gallons; to the Borough of Rankin, nine and one-third cents per thousand gallons; to the Union Switch & Signal Company from eight to sixteen cents per thousand gallons; a new contract was made with the Pittsburgh Meter Company at a low rate on November 1, 1911, long after the increased published rate went into effect.

On March 23, 1911, the defendant company supplied 12,414 domestic consumers, of whom 4,500 were not affected by the increased rate; 2,500 have their rates in-

creased from thirty to thirty-five per cent. and the balance of the domestic consumers have their rates increased sixty-six and two-thirds per cent. No increase was made under the change of January 1, 1911, to those receiving water under special contracts, except to the inhabitants of the Borough of Turtle Creek, Wilkinsburg, East Pittsburgh and Pitcairn, being the domestic consumers in said boroughs, and the rates charged to said boroughs for fire service.

The average daily demand upon the Pennsylvania Water Company for water supply does not exceed 10,000,000 gallons; its plant is capable of supplying over 30,000,000 gallons per day; the defendant's Port Perry plant, which is carried at a high valuation, is not in continuous use and cannot supply pure water to domestic consumers.

In the year 1910, out of a total pumpage of 1,835,640,-000 gallons, of which the industrial service under the contracts mentioned received 1,358,808,000 gallons; the revenue received from said service was $63,392.00; during the same period out of said total pumpage, the domestic service amounted to 688,942,000 gallons, and the revenue received was $173,444.00.

For the year 1911 the defendant furnished domestic consumers 722,204,250 gallons of water for which it received $239,574.31; during the same period it delivered to industrial consumers with special contracts 1,317,-444,472 gallons of water, receiving therefor $82,293.37, or an average of about six and one-fourth cents per thousand gallons; these latter consumers used about two-thirds of the total production and pay on an average of one-fifth of that charged to domestic consumers.

To April 1, 1911, the defendant actually expended for its property $2,690,585.38; this includes assets on hand as pointed out in the court's discussion; it is subject to deductions for further depreciation not appearing in the estimate upon which the figures are based, an indeterminate amount for going value and interest during con-

struction is considered in fixing the total value of the plant.

The gross receipts of the defendant for the calendar year of 1911 were $354,277.02; the amounts expended for maintenance and operation were $127,008.67; the amount written off for depreciation that year was $30,971.94; the operating profit at $196,296.41 is 6.01 per cent. on defendant's valuation of $3,300,000.00.

If all the water supplied during the year 1911 had been paid for in accordance with the rates published, the rates would have been increased sufficient to have made a profit of 7.72 per cent. on the defendant's claimed valuation. The rate as fixed by the court upon the value fixed by the court is an adequate return for the service rendered.

The value of defendant's property, under all the evidence, upon which it is entitled to a fair return, after the payment of expenses and cost of operation, including depreciation, or a fixed sinking fund in lieu thereof, is the sum of $2,750,000.00, and the rate fixed by the court for domestic consumers will, with the other rates to be paid produce a net return not less than six per cent.

Defendant is entitled to receive a reasonable return of not less than six per cent. upon the value of its property as fixed by the court after the deduction of all expenses of operation and maintenance, less reasonable depreciation, or in lieu thereof a sinking fund; a gross income of $420,000.00 per annum would not be unreasonably large, if equitably obtained from all class of consumers. It appearing at the argument to be conceded that many of the outstanding bonds of defendant company paid a rate more nearly approximating five per cent. than six per cent., the observations in the former opinion that the rate should not be less than seven to seven and one-half per cent. is modified to stand not less than six per cent. in accordance with the opinion of the Supreme Court in the Brymer case.

The power conferred upon a Court of Equity under

the Act of April 29, 1874, P. L. 73, to inquire into and determine the charges for gas and water, carries with it jurisdiction to determine the reasonableness of charges irrespective of prior contracts; to that extent such contracts may be reformed; this applies to the defendant as well as to the plaintiffs. Changed conditions, whereby the Allegheny river has been made the base of supply and the defendant has been compelled to supply filtered water, at a large item of increased cost, justifies a reasonable change in rates, as affected by changed conditions since 1888. It follows, not only that the rates to domestic consumers as contemplated by the original ordinances may be slightly increased but that the rates for public and industrial service should, in justice and equity bear their share of the burden; the contracts with the various boroughs, where not limited by time, are revocable for the purpose of changing to a rate which will measurably assist in yielding an adequate return; so also should the rate charged to industrial service be made to bear a more equitable burden.

The rates in the new schedule of the defendant to domestic consumers for water furnished by meter, since January 1, 1911, are unjust and unreasonable and bear an undue proportion of the burden as compared with the rates charged to other service.

The readjustment of the defendant company's rates under the pleadings and evidence must be in relief of the domestic consumers affected by the increased rates over and above the minimum meter charges. The defendant's estimate of value having been reduced one-sixth, the present rates charged to domestic consumers, must be reduced not less than that amount, as applicable to that class of domestic consumers set forth in the half-yearly schedule. Defendant's suggestion in compliance with the former conclusion of law as then stated by the court is, saving its protest against the same, to reduce the present charge from twenty-five cents to twenty cents per hundred cubic feet to those consumers using more

than the minimum amount of 2,000 cubic feet each six months; this approximately agrees with the rate fixed by the court; this proportionate reduction to extend through, and to, all classes of domestic consumers affected thereby in the schedule relating to such consumers; approximately the rate so fixed by the court is a decrease of one-half of the increase promulgated, and at present collected by the defendant company, as applied to this particular class of domestic consumers; the rate so fixed is deemed fair and adequate and covers all the contingencies heretofore fully discussed. The new rates hereby fixed may be incorporated into the final decree.

As there does not seem to be sufficient evidence upon which a fact or facts could be found as to a new proposed schedule of rates for municipalities or to public service, including fire protection, and detailed changes of such rates are not at issue as to the method, or reasonableness thereof, and the same are not pressed by counsel, nor was any request for a finding in connection therewith presented, no conclusion thereon enforceable by decree can be found as to the amount of the proposed new rates, and reference thereto in the first opinion and findings are modified accordingly.

Permanent injunctions should be granted restraining the defendant from further charging the rates promulgated by its schedule of January 1, 1911, to domestic consumers, and requiring it to charge the rates as herein fixed by the court to said consumers, further requiring the defendant to repay or credit domestic consumers with the difference between the rates charged and collected since the first of January, 1911, and the proper rate to be charged therefor, as fixed in this adjudication.

The defendants should pay the costs in the several bills, except to the extent that under the cross-bills and pleadings these conclusions find that contracts unlimited in time between the defendant company and the borough

plaintiffs, are revocable; such costs to that extent should be paid by the defendant in said cross-bills.

So far as the findings and conclusions herein announced support the exceptions filed by the respective parties, they are sustained, otherwise they are dismissed.

Exceptions to various findings of fact and law of the trial judge were dismissed by the court. Defendant appealed.

*Errors assigned* were in dismissing the exceptions.

*George B. Gordon,* of *Gordon & Smith,* and *Duff & Carmack,* for appellants.

*J. A. Langfitt,* with him *H. W. McIntosh, C. B. Prichard, C. C. Baldridge, S. J. McKim, J. N. Huston, J. E. Hindman, John D. Meyer, V. L. Barbor,* and *S. H. Huselton,* for appellees.

OPINION BY MR. JUSTICE ELKIN, January 5, 1914:

The matters in dispute between the boroughs and the water company were presented to the court below for determination under the provisions of the Act of April 29, 1874, P. L. 73. The bills were filed by the boroughs to restrain the water company from shutting off the supply of water to consumers because of their refusal to sign contracts to pay increased rates, and to have the court inquire into the alleged unreasonableness of the proposed increase of charges in order that such decrease might be decreed as should be deemed just and equitable under the facts. The pleadings and testimony cover 1,385 pages of the appendix, while it requires ninety-five pages of the paper book to print the requests for findings of facts and of law, the opinions of the court below, and exceptions thereto. This shows how exhaustively the case was presented in and considered by the court below. Every question raised here was fully considered there, and nothing deemed material or helpful to their respec-

tive contentions was overlooked by the vigilance of counsel. The record is a satisfactory one because it shows most intelligent presentation by counsel and painstaking care on the part of the learned chancellor. Every question raised was given fair and full consideration, and our concern here will be to determine whether under the facts reversible error was committed in the application of the law. Both sides appealed from the decree and in the present cases we have to do with the appeals of the water company. Learned counsel for appellant state the two fundamental questions in all of the cases to be: (1) The value of the water company plant; and (2) the net earnings the company should be allowed as a fair return upon that valuation. There are seventeen assignments of error, but they all relate to the two fundamental questions just stated, and need not be discussed separately. It is strongly urged by counsel for appellant that the court below should have found as a fact under the evidence the value of the plant to be $3,300,000, and that it was error to fix its valuation at $2,750,000 as the learned chancellor did. It is argued that this result could only have been obtained by arbitrarily scaling down the valuations placed upon the properties by the witnesses, or by the disallowance of certain items which should have been considered in arriving at a proper valuation for the purpose of fixing a basis upon which to compute the net earnings to which the company was entitled in order to secure a fair return upon the capital invested. The answer to this position must of necessity depend upon the fact whether the court did disregard the testimony and arbitrarily fix a valuation without reference to the proven facts. It has been necessary to read the testimony of a large number of witnesses in order to intelligently review the findings of fact upon which the court below based its conclusion as to the value of the plant. Having done so, we are not prepared to say that the trial judge either arbitrarily scaled down valuations placed on the plant by witnesses, or entirely

eliminated certain items which should have been allowed
in fixing the valuation.   In considering this question it
is important to remember that several witnesses testified
as to the value of the plant, each witness having a theory
of his own as to the proper method of ascertaining that
value, and no two of them were in exact accord.   It is
true most of the expert witnesses called by defendant
placed a higher valuation on the properties than the
court fixed, but on the other hand, it is equally true that
the testimony produced by the plaintiff would warrant
a much lower valuation.   In considering the question of
valuation the learned court below said:  "As is usual in
cases of this class, a wide space exists between the testi-
mony of the respective parties as to the value of de-
fendant's properties, varying from $1,584,354 by the
plaintiff, and $3,300,000, and more by one witness, on the
part of the defendant."   This is followed by a discussion
of the testimony of the witnesses, Lyons, Crowther,
Kuichling, Hawley, Forbes, Metcalf, Davison, Pence and
Knowles.   The discussion of the testimony of these wit-
nesses amounts to a demonstration that the learned
chancellor carefully considered the question of value
from every angle, and did not act arbitrarily or ca-
priciously in fixing the valuation of defendant's proper-
ties.   No doubt counsel for appellant believe that the
court should have accepted the statements of their wit-
nesses as the best evidence of value, but the court was
not bound to accept their estimates of value as conclu-
sive of the fact, but only to give it the weight to which
it was entitled in connection with all the testimony in
arriving at a just valuation.   Upon the question of
value the testimony was conflicting and it was the duty
of the court to consider all of the relevant facts in fixing
a fair valuation upon the properties.   It may be, as ap-
pellant contends, that the weight of the testimony would
justify a higher valuation, but the question for decision
here is whether there was such palpable error in the
findings of fact as to warrant a reversal of the decree.

Appellate courts do not reverse findings of fact by a court of first instance unless there be manifest error. This is the rule of all the cases, and, as we view it, is conclusive against appellant on this branch of the case at bar. The testimony was ample to sustain the conclusion reached, and this is the limit of our inquiry: Rorabaugh's Est., 229 Pa. 377. It is not ground for reversal on the findings of fact that a different conclusion might have been warranted from the evidence, or that this court might have arrived at a different result if called upon to determine the fact as a court of first instance: Plankington's Est., 212 Pa. 235. Our duty in reviewing findings of fact, is to ascertain whether there was testimony, which, if believed, would sustain the findings: Oil Well Supply Co. v. Manufacturing Co., 234 Pa. 378.

As to the items of "going value," interest during the period of construction, and the cost of repairing the streets, which appellant contends were not allowed, or at least that there were no distinct findings as to these items, we agree that these were elements to be considered in arriving at a just valuation of the properties, but we cannot agree that it was the duty of the court to set out in its findings each separate item of value and make the sum total of the separate items the final conclusion of the court as to the valuation of the entire plant. In the opinion of the court in banc on the exceptions to findings of fact and conclusions of law, it is stated that these items were not eliminated by the trial judge in fixing the valuation, but that they were given due consideration. It is further stated that the trial judge did consider "going value" as an element in fixing the value of the plant as a whole. It is not so clear what disposition the court made of the item for street paving, but that it was not overlooked is shown by what the court stated in reference to the same. It may be that some of the items were undervalued, but in the valuation of the entire properties of a company of the magnitude of appellant, we would not feel warranted in re-

versing the decree on the ground that the learned court below may not have given due weight to some of the smaller items included in the total valuation. What we do decide now is that under all the evidence the valuation fixed by the learned court below is a fair one, and that we find no such error as would warrant a reversal of the decree on the ground of under-valuation. The same may be said as to the contention that the earnings of appellant under the rates established by the decree are insufficient to yield a fair return upon the capital invested. The rates must not be confiscatory and they must be such as to yield a fair return upon a just valuation of the plant. The elements to be considered in fixing the valuation, and what deductions should be allowed from gross earnings for maintenance and operating expenses, for payment of fixed charges, for depreciation and sinking fund purposes, were fully considered by the lower court in the light of many adjudicated cases, and especially of our own cases: Brymer v. Butler Water Co., 179 Pa. 231; Pennsylvania Railroad Co. v. Philadelphia, 220 Pa. 100. As to the law applicable to the facts of this case, we can add nothing of value to what has been so well said by the learned court below. We are not convinced that the conclusion reached will deny appellant a fair return upon a just valuation of its properties, or that any violence was done to the rights of the water company in the application of the law. It may be proper to suggest here that this conclusion is based upon the findings as they appear in the present record, and is not to be taken as a final adjudication of the rights of the parties for all time. If in the future it shall be made to appear that the net earnings of the company are not adequate to yield a fair return upon the value of its plant, the courts, or other proper tribunal, may be resorted to for the purpose of having the rates changed so as to meet the conditions that may then be shown to exist. But upon the present record we find no sufficient reason to disturb the decrees entered by the court below.

We need but advert to the contention of appellant that the court had no jurisdiction to decree repayment to persons who are not named as direct parties to the bills. No authority is cited in support of this position. The bills were filed by the boroughs and two citizens and taxpayers thereof on their own behalf and on behalf of other citizens who are consumers of water. On this question we adopt with approval what was said in the opinion of the lower court sur exceptions to the conclusions and findings filed December 16, 1912. We agree that equity having assumed jurisdiction with respect to the general subject under consideration, especially when some of the prayers asked for this specific relief, the decree may be made broad enough to include every incidental question or dispute within the general purpose.

Decrees affirmed. The costs to be paid by appellant.