# Gongaware's Estate.

*Practice, Supreme Court—Appeals—Findings of fact—Orphans' court—Evidence—Witnesses—Competency—Decedents' estates.*

1. Under Section 2 of the Act of June 16, 1836, P. L. 683, appeals from the orphans' court must be heard and determined according to the justice and equity of the particular case.

2. Specific findings of fact by that court will not be reversed unless there is no evidence to support them, or they are clearly erroneous and to uphold them would work a manifest injustice.

3. This is so even though upon a reading of the evidence an opposite conclusion would seem correct.

4. This rule, however, does not apply where the findings are only inferences or deductions from other facts, or conclusions from reasoning.

5. Distributees are not competent witnesses to prove gifts by decedent to themselves, but are competent to prove his gifts to other distributees.

6. In view of the opportunities for collusion growing thereout, the court below is not required to accept such testimony as verity.

*Evidence—Ownership of personal property—Presumption—Gift —Burden of proof.*

7. As between people who live together, ownership of the place raises no presumption that the personal property therein belongs to one rather than to the other.

8. He who pays for an article is presumed to be the owner, and one who alleges a gift thereof has the burden of proving it.

9. The quantum of evidence to prove a gift depends on the circumstances of the particular case. It need not be so clear between husband and wife and parent and child, as it would be required to be between strangers.

*Executors and administrators—Advice of counsel—Notes.*

10. Where in good faith and under advice of counsel an administratrix surrenders to the payee notes found in decedent's possession, because of a belief they have been paid in full to decedent, the proper course is to suspend the question of surcharge and direct that suit be brought upon the notes.

*Executors and administrators — Commissions — Unconverted assets.*

11. Commissions will not be allowed on unconverted assets.

12. If accountant has had extra trouble he should ask additional compensation therefor, and not seek to obtain it by way of a percentage on unconverted assets.

Argued September 30, 1919. Appeal, No. 64, Oct. T., 1919, by Margaret J. Gongaware, from decree of O. C. Westmoreland Co., May T., 1917, No. 78, dismissing exceptions to distribution in Estate of Hezekiah Gongaware, deceased. Before BROWN, C. J., STEWART, FRAZER, WALLING, SIMPSON and KEPHART, JJ. Reversed in part.

Exceptions to distribution. Before COPELAND, P. J.

The court dismissed the exceptions. Margaret J. Gongaware, Administratrix, appealed.

*Errors assigned* were dismissal of exceptions to distribution.

*John E. Kunkle,* for appellant.—The court's finding, if not sustained by the evidence, will be set aside or disregarded: Speakman's App., 71 Pa. 25; Sawtelle's App., 84 Pa. 306; Harbison Est., 145 Pa. 456; Milligan's App., 97 Pa. 525; Hindman's App., 85 Pa. 466; Lackey's Est., 181 Pa. 638; Nauman's App., 116 Pa. 505; Fehl's Est., 13 Pa. Superior Ct. 601; Barnes's Est., 221 Pa. 399.

*James S. Moorehead,* with him *W. C. Peoples* and *Robert W. Smith,* for appellees.

OPINION BY MR. JUSTICE SIMPSON, January 5, 1920:

Hezekiah Gongaware died January 11, 1916, intestate, leaving to survive him a widow, four sons, one daughter, and an adopted daughter. One son and one daughter were children by a former wife, and were married and living in their own homes. The other children were over age and married, and they and their families and the adopted child lived with decedent as part of his family,

and worked upon the place without receiving wages therefor. The widow was appointed administratrix of the estate, filed an inventory and appraisement of the personal property admittedly belonging to decedent, and, at the request of the children by the first wife, had the appraisers make a list of and appraise certain other articles which she and some of her children claimed to own. To the administratrix's account exceptions were filed by appellees, who are the children by the first wife, evidence was taken in regard thereto, she was surcharged, some of her exceptions were sustained and some dismissed, a decree of distribution was made, and she now appeals.

Under Section 2 of the Act of June 16, 1836, P. L. 683, it is our duty on appeals from the orphans' court to "hear, try and determine the merits of such cases, and to decree according to the justice and equity thereof." We have consistently held, however, that where specific facts are found by the court below we will sustain the findings unless there is no evidence to support them, or they are clearly erroneous and to uphold them would work a manifest injustice (Barnes's Est., 221 Pa. 399; Seidman's Est., 261 Pa. 540), and this is so even though we might reach an opposite conclusion if we were sitting in a court of first instance (Plankinton's Est., 212 Pa. 235; Turtle Creek Borough v. Pennsylvania Water Co., 243 Pa. 401); but this rule does not apply where the findings are only inferences or deductions from other facts, or conclusions from reasoning: Hindman's App., 85 Pa. 466; Milligan's App., 97 Pa. 525; Cake's App., 110 Pa. 65.

In the present case the court below decided that the widow and children were severally incompetent to testify in support of their own claims, where the matters occurred during the lifetime of decedent, but that each of them was competent to testify as to the claim of any other, for the reason that such testimony was against the interest of the witness. Appellees agree with these

conclusions of law, and we will treat the case according-ly, without deciding, however, whether or not the widow is a competent witness, in view of the fact that to avoid a surcharge she is interested against the estate to the extent of the total value of the property claimed, and if the estate's right is sustained she will personally receive only one-third of such value.

It does not follow, however, because they were com-petent witnesses the court below was obliged to accept their statements as verity. The opportunity for col-lusion is always great where two or more people take turn about in testifying for each other, and hence we are not prepared to say the court below clearly erred in refusing to find as facts those conclusions which depend-ed on their testimony only: Eppsteiner v. Isman, 239 Pa. 393; Crusan v. Crusan, 243 Pa. 165. We therefore overrule the 3d, 4th, 6th, 7th, 8th, 9th, 18th, 19th, 20th, 21st, 22d, 23d, 24th, 25th, 26th, 27th, 28th, 30th, 31st, 32d, 33d, 34th, 35th, 36th, 37th, 38th, 39th, 40th, 41st, 42d, 43d, 44th, 52d, 53d, 54th, 55th, 56th, 57th, 58th, 59th and 60th assignments of error, because the evidence upon which appellant relies to sustain them has no substantial basis outside of her own testimony and that of her children who are also claimants against the estate.

Many of the other rulings of the court below are based upon the fact that the articles the subject of this con-troversy were in the house and upon the farm occupied by decedent, from which it was concluded a presumption arose they were his property. Inasmuch, however, as the widow and children who are claiming them also lived in the same house and worked on the same farm, in the nature of things no one of the family would have exclusive possession of these particular articles. On the other hand, it was admitted at the oral argument that most thereof were purchased with the money of decedent, and hence the presumption is they were his, and the burden of proving a gift from him is upon those

who allege it. The weight of evidence required, however, necessarily varies with the particular circumstances, and it is not to be lost sight of that it would have been most natural for a decedent to make gifts to the wife and children living with and working for him in such a close family relation as it is admitted existed in the present instance; and that possibly the only ones who would know and almost certainly those who would best know whether or not such gifts had been made, are the same persons. It is suggested to us, however, that the language of decedent, from which it is sought to prove an acknowledgment of making the gifts, is as compatible with a delivery for use only as with an intent to pass title. For instance, where he said "this is Mortie's," it is alleged he might have meant only this is Mortie's to use. This, however, is an inference only, which circumstances might indeed justify, but is not a clear finding of fact, or usually a probable conclusion. So far, however, as we have given to decedent's statements a broader interpretation the occasion has made the inference reasonably certain.

The 5th assignment of error relates to a cream separator which decedent did not order, and the 29th to a piano, which he probably did, but each of which are claimed by appellant, and were at least partly paid for by her. In addition to the testimony of the sons, there is in each case the evidence of disinterested witnesses that appellant asserted her ownership in the presence of decedent and he did not dispute the claim, but on the contrary admitted it. None of the foregoing evidence was contradicted and hence these assignments are sustained.

The 10th to 17th assignments of error relate to the value of certain threshing outfits which were claimed by the son, Charles Mortie Gongaware. As to one of these the evidence shows it was largely paid for by checks of claimant on his own bank account. We cannot agree with the court below that this amounted to nothing because it was not shown whose money was in the ac-

count, for the presumption is that it was his money. In addition there was much uncontradicted evidence by a number of disinterested witnesses that decedent, though at one time engaged in the threshing business, had withdrawn from it, and told them his son, Mortie, owned the property and the business, and paid the bills for the repairs and received the money for the work done, as he in fact did, the money sometimes being received by decedent and handed over to Mortie. It would answer no good purpose to review this evidence in detail. It was certainly sufficient to override any presumption growing out of the fact that the outfits were on the home farm of decedent, and in part were purchased by him. It is a reasonable conclusion that when decedent retired from the business he made a gift thereof and of the outfits to the son who had handled them for many years without any wages or other compensation, except his support out of the farm which he himself helped to work; especially as it was testified that the consideration for the gift was the son's agreement thereafter to do his father's threshing without charge. These assignments, therefore, are sustained. This conclusion also disposes of the 63d, 64th and 65th assignments, which are overruled because the testimony therein referred to is unimportant in view of our finding as to the ownership of the threshing outfits.

The 46th to 51st assignments relate to a surcharge in the sum of $3,920, the amount of certain notes of one Taylor Kunkle, which were found in the possession of decedent and were later returned to the maker, because appellant was convinced they had been paid in full to decedent. After his death the matter was taken up with the payee of the notes, who claimed he had from time to time paid sums of money and furnished materials, which should have been credited on account thereof, and which together aggregated slightly more than the amount of the notes. There was found among decedent's papers a small account book which specified

these notes, with entries underneath apparently showing payments of cash as claimed by the maker. The court below expressed a doubt as to whether or not the entries therein were in the handwriting of decedent, but did not definitely determine they were not; and decided the case upon the ground that he was "constrained to conclude there is not sufficient evidence that these notes were paid." The gravamen of appellee's claim is that appellant should have sued upon the notes instead of returning them, and, as the event shows, this is true; but the mistake was an honest one, made under advice of counsel, and is not irreparable, for if one was made it was a mistake of fact, partially caused by the maker's claim the notes had been paid, and recovery can still be had upon them, even though they have since been destroyed: Donner v. Sackett, 251 Pa. 524. To sustain the surcharge would result in appellant being compelled to pay the $3,920, and yet upon the trial of a suit against the maker she might be refused any recovery for reasons which would be conclusive. Her three sons and the adopted daughter evidently also believe the notes had been paid to decedent, for they acquiesce in the credit claimed therefor in the account. Appellees do not, however, and "justice and equity" will be done, therefore, by sustaining these assignments without prejudice, and by requiring appellant to forthwith sue the maker and faithfully prosecute the suit, or to give to appellees the right so to do in her name as administratrix, and it is therefore so ordered. Upon a later accounting, which in any event must be had, appellees may renew their claim of surcharge if the suit or recovery is defeated because of that which appellant at any time did or omitted to do.

The 61st assignment of error alleges the court below erred in reducing appellant's commissions, which were allowed at the rate of five per cent upon all the collections made, but was refused upon items of property not yet converted. We think this is clearly correct. If ap-

pellant had extra trouble entitling her to additional compensation, satisfactory evidence to that effect would doubtless have resulted in an increased allowance, but this would not be measured by a percentage of the appraised value of uncollected items, and the assignment is, therefore, overruled.

The only other assignments are the 1st, which relates to the final decree and is sustained to the extent hereinbefore set forth, and the 2d, 45th and 62d, which are general in character, embodying matters already considered in detail, and are therefore overruled.

The decree of the court below is reversed to the extent indicated in this opinion, and the record is remitted for further proceedings in accordance therewith.