## Boyer's Estate.

*Decedents' estates — Orphans' Court — Jurisdiction — Title to personal property.*

1. Where there is a substantial dispute as to the ownership of personal property, the Orphans' Court has no jurisdiction except to direct an issue to be tried in the Court of Common Pleas.

2. Certain securities were in a bank in a safe deposit box of decedent, different envelopes therein bearing the names or initials of different persons, decedent having possession either as owner or bailee. These securities were not included in the inventory of the estate and not accounted for in the account: *Held,* that the court had no jurisdiction, and an issue should be awarded to determine the title.

Exceptions to account and to auditor's report. O. C. Lehigh Co., No. 16324.

*Dallas Dillinger, Jr.,* for exceptants.

*Samuel J. Kistler* and *Horace W. Schantz,* for accountant.

RENO, J., Jan. 4, 1923.—Joshua M. Boyer died intestate on Feb. 2, 1920, leaving to survive him a widow, Edith M. Boyer; their daughter, Evelyn, and two sons by a former marriage, Herbert Boyer and Clarence Boyer. On Feb. 7, 1920, Edith M. Boyer went to the Second National Bank of this city and opened the safe deposit box of Joshua M. Boyer and took the box and its contents into the directors' room of that institution. While she was examining the contents of the box, the cashier of the bank, Charles Moyer, came into the directors' room and inquired whether she had any authority to open the box. When she told him that she had not qualified as administratrix, he insisted that the contents be returned to the box and placed in the vault, and advised her that she might have the same when she was appointed administratrix. Before replacing the contents into the box, the cashier made a memorandum of the contents, which memorandum was offered in evidence before the auditor, which, in substance, was as follows: That the contents of the box consisted of *(a)* an envelope of the John Hancock Life Insurance Company, on which the name of "Edith M. Boyer" appeared, apparently written by the company, contained Liberty Bonds of the par value of $3400 and War Savings Stamps of the par value of $400; *(b)* an envelope marked "J. M. B. 11-17-19 3100," contained nothing; *(c)* an envelope marked "E. M. B. 11-17-19," contained Liberty Bonds of the par value of $1600 and War Savings Stamps of the par value of $500; *(d)* an envelope marked "Tillie Minnich," contained Liberty Bonds of the par value of $1200; and *(e)* an envelope marked "Evelyn Boyer," contained War Savings Stamps of the par value of $100. Subsequently letters of administration were issued to Edith M. Boyer, whereupon she took the contents of the box from the bank. The securities referred to in the memorandum were not included in the inventory of the estate and not accounted for in the account. Exceptions were filed to the account by Herbert and Clarence Boyer, and at the audit claim was made that the securities referred to were part of the estate of the decedent. The contention of the exceptants was that the securities were the property of the decedent, and that if a gift of them was intended by him, such gift was invalid because of a failure to complete it by delivery. On the other hand, Edith M. Boyer claimed that the securities never were the property of Joshua M. Boyer, that they were purchased by her for herself with her own funds, and were placed in the box of her husband for safe keeping.

From this brief statement of the facts, it is obvious that the primary question is the jurisdiction of this court. The question at issue is title. The exceptants claim title is in the estate. Edith M. Boyer and Tillie Minnich

3 D. & C.

claim that title is in them. The precise question, therefore, was whether decedent had possession as owner or bailee. Has the Orphans' Court jurisdiction to determine this question? This point was not raised by either party, either here or before the auditor, but the question being jurisdictional, we are obliged to decide it. ·

We are instructed by Cutler's Estate, 225 Pa. 167 (Justice Stewart speaking for the Supreme Court), that "If at testator's death the property is shown to have been in his possession, or if, for any other reason, it was presumptively his, a mere denial of his ownership unsupported will not oust the court of its jurisdiction, but the court may proceed with the investigation so far as to inform itself whether the denial is made in good faith and a substantial dispute exists. . . . Having once determined that a substantial dispute existed as to the ownership . . . the court . . . should at once direct an issue to the Common Pleas."

Later, in Cooper's Estate, 263 Pa. 37, Justice Stewart further explains the phrase "substantial dispute" in this language: "We feel that we ought not now to be called upon to explain that where the phrase 'substantial dispute' occurs in the opinion, the reference is to some dispute touching the ownership or possession of the property by the testator at the time of his death, which circumstance is essential to the jurisdiction of the court."

The doctrine in Cutler's Estate, 225 Pa. 167, has been the subject of comment in many succeeding cases, and some applications of the rule are, perhaps, difficult to understand. But we think it may be confidently asserted that the true rule requires that, when, after an investigation *in limine*, the Orphans' Court determines that property not brought within its grasp by inventory or account is held under a *bona fide* claim of title, and that a substantial dispute touching the ownership or possession of the property at the time of testator's death exists, that court has no jurisdiction, except to direct an issue to be tried in the Court of Common Pleas.

We need not hesitate to affirm that such a dispute is before us. Both sides claim title. The securities themselves were in a safe deposit box standing in the name of the decedent, but were marked with the names of claimants. That circumstance considerably weakens the presumption of ownership arising from possession and makes it impossible to assert with any degree of confidence that the presumption is at all available to exceptants. For it has been held that "the possession by the husband of his wife's deeds and securities is regarded by the law as consistent with a possession in her:" Kulp *v.* March, 181 Pa. 627; Turner *v.* Warren, 160 Pa. 336. Nor should a different rule apply with respect to the securities of a mother-in-law living in decedent's home. It comes to this, that title not being inferable from possession, a substantial dispute as to the ownership concerning it exists.

Whatever reluctance we have experienced in requiring a retrial of this case in the Common Pleas is altogether dissipated by an examination of the record. Undoubtedly the learned auditor, in formulating his findings, considered, although he does not so state, only the competent evidence. But if, perchance, he considered that which was incompetent, he could hardly be criticised; it is difficult to separate the goats from the sheep in this record. Both Edith M. Boyer and Tillie Minnich testified on behalf of their own claims, as to which certainly Tillie Minnich and possibly also Edith M. Boyer were incompetent: Wise's Appeal, 182 Pa. 168; Gongaware's Estate, 265 Pa. 512. Perhaps Edith M. Boyer became competent by some inquiries upon cross-examination of matters occurring before the death of the decedent, but even this is not

very clear. Moreover, even if thereby rendered competent, her credibility was considerably shaken, if not wholly destroyed, by her contradictory answers to questions concerning some more or less collateral issues. Whatever may have been the motive which inspired her admittedly false testimony, the fact remains that she has not shown that high regard for the binding obligation of an oath which would permit a court to rely upon her testimony with confidence. Of course, besides testifying for themselves, Edith M. Boyer and Tillie Minnich also testified for each other, but "the opportunity for collusion is always so great where two or more people take turn about in testifying for each other" (Gongaware's Estate, 265 Pa. 512) that a decision based upon only such testimony is fraught with great danger. On the whole, the case will be tried better before a jury.

Hence, in accordance with the provisions of the Act of June 7, 1917, § 21, P. L. 363, 382, we deem it expedient that an issue be directed to the Court of Common Pleas. Counsel may prepare the issue and submit it for approval. In the meantime, the exceptions to the auditor's report will be held in abeyance. We shall be better informed then to determine the questions involved in the other exceptions, particularly those relating to the costs, etc.

Now, Jan. 4, 1923, an issue is directed to the Court of Common Pleas to determine the title to the securities alleged by exceptants to belong to decedent at the time of his death. Counsel for exceptants, upon notice to accountant, may present formal order of terms and stipulations of the issue for the approval of the court. Unless presented within sixty days from the date hereof, exceptants will be deemed to have waived their claims. Exceptions to auditor's report held under advisement pending determination of the issue.

From James L. Schaadt, Allentown, Pa.