## Schmidt's Estate

Before Lamorelle, P. J., and Gest, Henderson, Van Dusen, Stearne and Sinkler, JJ.

*Ruby R. Vale*, for exceptant; *Philip Price* and *Charles Myers*, contra.

HENDERSON, J., June 19, 1933.—These exceptions are to the report of a master who has recommended a decree opening the adjudication on the ground of constructive fraud.

Little need be added to the thorough and comprehensive report of the learned master. His findings of fraud are rested almost entirely on documentary evidence and we see no escape from his conclusions. The duty, because of the confidential relation of these trustees, the brothers of Mrs. Ebling, rested heavily upon them when procuring her signature to inform her that she was parting with what in law belonged to her and was investing these trustees personally with a contingent interest in these shares of stock. They not only failed in their duty but, what is worse, gave their sister the erroneous information that unless she consented to have her share of this stock dividend treated as capital it would be subjected to a heavy tax.

The master's findings of fact are fully supported by the evidence in the case and all the reasonable inferences and probabilities flowing therefrom, and such findings should be accorded the same force as the verdict of a jury.

In Thompson's Appeal, 103 Pa. 603, 607, our Supreme Court said:

"It is hardly necessary to repeat what has been so often said, that a court ought not hastily set aside the conclusions of a Master or Auditor upon the facts of a case submitted to him. This ought to be done only upon the discovery of some plain and obvious error, or where the whole evidence shows such a preponderance against his finding, that, were it a verdict of a jury in a Court of Common Pleas a new trial ought to be granted."

In Belmont Laboratories, Inc. v. Heist et al., 300 Pa. 542, it appeared that the court below in banc overruled the findings of the chancellor, and in remitting the record reversing the court below the Supreme Court directed the entry of the decree in accordance with the recommendations of the chancellor. In that opinion our Supreme Court said (p. 547):

"On appeal, the chancellor's findings, however, do not have the same conclusive force when, as in the instant case, they were overruled by the court in banc. Even then the chancellor's findings, where as here depending upon conflicting oral evidence, given by witnesses which he saw and heard, must receive great weight. In the very recent case of Thorndell, Admin'x, et al. v. Munn, 298 Pa. 1, Mr. Justice Simpson, speaking for the court, says (page 3): 'The nature of the principal differences of fact between the chancellor and the court in banc, again compels us to call attention to the well-settled rule that though it is the duty of the latter to review carefully such of the findings of fact of the former as have been made the subject of exceptions (Worrall's App., 110 Pa. 349; Miller's Est., 279 Pa. 30; Gehringer v. Erie Rys. Co., 297 Pa. 47), yet great weight is to be given to those findings in cases where, as here, they depend, in large degree, on the credibility of witnesses whom he saw and heard, and whose testimony, for that reason, he is best able to weigh (Clarkson v. Crawford, 285 Pa. 299, 303; Hall & Co. v. Lyon, Singer & Co., 286 Pa. 119; Phillips's Est., 295 Pa. 349), as the tone and manner of a witness not infrequently indicate whether or not he is telling the truth.'"

The two trustees, brothers of Mrs. Ebling, were offered as witnesses to the transaction under inquiry. The master sustained an objection to their competency on the ground that they were surviving parties to the subject in controversy and had an adverse interest to the deceased party. The trustees urged that they were not adverse, within the meaning of the act, in that they were also contingent remaindermen under the Ebling will. While that is true, it is also true that if this review is not granted they will presently take absolutely under their father's will that which under the Ebling will is merely a contingent remainder. Upon balancing the substantialities as between the interests of these two witnesses in the two estates we find their interests in

their father's estate far outweighs those under the will of their sister, Mrs. Ebling.

In Dinger v. Friedman et al., 279 Pa. 8, 14, our Supreme Court said:

"In determining the character of the interest of a person called to testify, the substantialities of the situation, not mere technical reasoning, control: Taylor v. Henderson, 17 S. & R. 453, 456, 457. Where the substantialities of the situation show that the interest of the witness would be promoted more by the success of the party calling him than by that of the other side, the adverseness contemplated by the statute is lacking; for a person who will be affected in a material sense by the success of either party to a suit is considered in law as favoring the side on which his personal interest preponderates: Guldin's Admin'rs v. Guldin's Admin'r, 97 Pa. 411, 414; Miller v. Hale, Dud. (Ga.) 119; and opinion of Lord Mansfield in Brown v. Brown, 4 Taunt. 752, a case with aspects similar to those of the one before us."

We call attention to our rule forbidding single spacing in the typewriting in paper books. The labors of the court are greatly increased by a refusal to observe this reasonable request. Such briefs may be suppressed or directed to be rewritten.

The exceptions are dismissed and the following decree is entered:

And now, June 19, 1933, the adjudication is referred back to the auditing judge for the sole purpose of determining the persons entitled to the stock dividend, as recommended by the master.