[S. F. No. 6846.   In Bank.—August 22, 1916.]

## SOUTHERN PACIFIC COMPANY et al., Appellants, v. SPRING VALLEY WATER COMPANY et al., Respondents.

WATER COMPANY—GRANT OF RIGHT OF WAY FOR PIPE-LINE—AGREEMENT TO FURNISH GRANTOR WITH WATER WITHOUT CHARGE—CONSTRUC- TION.—An instrument whereby a railroad company, in considera- tion of the "construction and maintenance of a hydrant at a speci- fied station and the free use of water therefrom for fire and station and all other railroad purposes," granted to a public service water company a right to lay and maintain a' water-pipe for the conduct of its waters along a designated portion of the lands of the grantor, constituted an agreement by the water company to ·furnish water to the railroad from that flowing through such pipe, after the same was laid, and that the railroad was to have the free use thereof for the purposes designated, so long as the pipe-line was maintained along the route granted.

ID.—REAL PROPERTY—RIGHT OF WAY, PIPE AND WATER FLOWING THEREIN.—The right so granted to the water company to lay and maintain the pipe-line in the land of the railroad and to conduct water therein, was a species of real property, incorporeal in nature. The pipe and the water while passing through it were corporeal in character, and were real property belonging to the water company.

ID.—RIGHT OF GRANTOR TO RECEIVE WATER FROM PIPE—EASEMENT ON PIPE AND WATER SYSTEM.—Such instrument was, in legal effect, in the nature of an exchange, a grant of a right of way for the water conduit by the railroad to the water company, and a grant by the water company to the railroad of a water right consisting of a right to take a part of the water flowing in the conduit, by means of a connecting pipe, as needed. The water right was a burden or servitude upon the pipe-line and water system of the water company, a right to a part of its water.

ID.—EXECUTED AGREEMENT—COMPLETION OF PIPE-LINE—DURATION OF RESPECTIVE RIGHTS.—Upon the completion of the pipe and the run- ning of water therein, the respective agreements became executed, not executory. The right of way and its use thereafter was ac- cepted by the water company as payment in advance for the future use of the water by the railroad. These respective rights, although indefinite and unlimited as to time, were not necessarily perpetual, and the water company could, in the absence of a covenant to the contrary in the agreement, be relieved of the burden by changing the route of its pipe-line.

ID.—CONTRACT NOT OPPOSED TO PUBLIC POLICY—ABSENCE OF REGULA-
TION BY PUBLIC AUTHORITY.—Such contract is not void because op·
posed to public policy, there being no regulation or rule of any
public authority empowered to control or regulate public water ser-
vice in the place of use forbidding it, and the taking of the water
by the railroad not having the effect to reduce the supply re-
maining in control· of the water company below the quantity neces-
sary or convenient for the other consumers entitled to it or applying
for it.

ID.—CONTRACTS BETWEEN WATER COMPANY AND CONSUMER—VALIDITY OF.
Where the rates for water devoted to public use have not been fixed
by public authority, the person in charge of the use and the con-
sumer may freely contract regarding the price of service and the
manner of enjoyment, and such contracts will be deemed valid by
the courts and may be enforced by any appropriate mode.

ID.—REVISION OF CONTRACT BY PUBLIC AUTHORITY—ENFORCEABILITY UN-
TIL REVISED—CONTRACT CREATING EASEMENT.—While such a contract
is subject to revision by competent public authority, to the end that
the public service shall not be unjustly discriminatory, or unreason-
able, and that the private use shall not interfere with the public
use, until such public authority has intervened and modified the con-
tract, it will be recognized as valid, and enforced by the courts.
The power to revise and reform such contracts of public service water
companies, in the interest of the public, applies as well to a con-
tract creating or attempting to create an easement in the water
held for public use as to any other disposition thereof.

ID.—RAILROAD COMMISSION—AUTHORITY TO REVISE PRIOR CONTRACTS
RELATING TO WATER SERVICE.—Although the parties to prior con-
tracts relating to the service of water may apply for relief to the
railroad commission under the Public Utilities Act of 1911, they may
also resort, in pursuance of section 74 of that act, to ordinary actions
or proceedings in the courts for the enforcement of rights arising
under such contracts which the. commission has allowed to remain in
force.

ID.—TERMINATION OF CONTRACT FOR SALE OF PERSONAL PROPERTY—
CONTRACT SILENT AS TO ITS DURATION—CONTRACT CREATING EASE-
MENT.—The rule that a contract whereby one party agrees to supply
a commodity to the other, as required, at a fixed price, whether paid
in advance or payable on delivery, and is silent as to its duration,
may be terminated by either party after a reasonable time and upon
reasonable notice, although applicable in all cases where the con-
tract is one to buy and sell personal property, does not apply to
a contract creating an easement or servitude in real property con-
sisting of a right to a supply of water, and the supposed buying
and selling of the. water consists merely in the continued enjoyment
of the easement.

APPEAL from a judgment of the Superior Court of Alameda County, and from an order refusing a new trial.   William S. Wells, Judge.

· The facts are stated in the opinion of·the court.

Frank Thunen, Stanley Moore, Frank McGowan, and A. A. Moore, for Appellants.

McCutchen, Olney & Willard, for Respondents.

· SHAW, J.—The object of this action was to have the right of the plaintiffs to receive water from the defendants' main to the water-tank of the plaintiffs at Newark station in Alameda County declared and established, and to enjoin defendants from cutting the connection between said main and the tank, or from depriving plaintiffs of said water. The court made findings and gave its judgment in favor of the defendants. From this judgment and from an order denying a new trial the plaintiffs appeal.

The plaintiffs claim the right to have the delivery of water into their tanks at Newark continued indefinitely and without further charge under an instrument in writing executed on May 10, 1888, by the two plaintiffs and by the defendant Spring Valley Water Works. The instrument of May 10, 1888, omitting the unimportant parts, is as follows:

"Know all men by these presents: that the South Pacific Coast Railway Company and the Southern Pacific Company, Grantors, in consideration of Five Dollars to them in hand paid, and in consideration of the construction and maintenance of a hydrant at Newark station and the free use of water therefrom for fire and station and all other railroad purposes, have Granted and by these presents do grant unto the Spring Valley Water Works, Grantee, the right to lay and maintain a line or lines of iron water pipe conduit for the waters of said Grantee on and along the line situate, lying and being in the County of Alameda in the State of California, described as follows, to wit: [Here follows a description of the line of the conduit.]

"The said pipes to be laid so that the upper surface thereof shall be at least two and one half feet below the natural surface of the ground, and the ground to be restored and main-

tained by the said Grantee, its successors and assigns, to the natural level and grade thereof;

"To have and to hold the said right of way unto the said grantee, its successors and assigns forever."

At the time this instrument was executed the Spring Valley Water Works was constructing a water-main to carry water from its source in Alameda County to San Francisco, for the use of the city and county of San Francisco and its inhabitants. The right of way granted by said instrument was to be used as a place along which to lay said water-main. The South Pacific Coast Railway Company was the owner of a line of railroad running from Oakland through Newark station to Santa Cruz. The Southern Pacific Company was operating said railroad under a lease from its coplaintiff. The right of way granted extended along the line of the railroad through the village of Newark and was nearly four miles in length. It was parallel to the track, partly on one side thereof and partly on the other, passing under the track twice, and was situated from 32 to 36 feet therefrom. A main, three feet in diameter, was immediately laid by said water works along the line described, and for the purpose of supplying water to the plaintiffs' water-tank it inserted, near the station at Newark, a six-inch tap in the water-main, which was reduced to a three-inch pipe extending from the tap to the water-tank. The plaintiffs thereafter regulated the flow through this connection, so as to keep the tank filled with water for use when wanted. On September 14, 1903, the Spring Valley Water Works transferred its sources of supply and system of works, including the main through Newark, to the Spring Valley Water Company, and the latter has ever since continued to operate the system and to keep water flowing in said main and to plaintiffs' water-tank. The Southern Pacific Company has taken from said tank the water needed at that place for use in the operation of its railroad and for the other purposes mentioned.

Shortly before this action was begun the defendants threatened that unless the plaintiffs would thereafter pay a reasonable charge for the water taken for such railroad purposes the defendants would, on March 10, 1913, cut off the connection to the tank and refuse to deliver water thereafter. The village of Newark is unincorporated. The supervisors of Alameda County have never fixed rates for the service of

water devoted to public use within the county, and no public authority has ever fixed such rates or made any orders regarding the supply to the plaintiffs.

At the time of the sale or transfer of the water system from the Spring Valley Water Works to the Spring Valley Water Company, in 1903, the latter company had full knowledge of the existence and contents of said agreement of May 10, 1888, above set forth. At the time of the execution of said instrument the plaintiffs did not take from said tank for their use more than twenty-five thousand gallons of water per day. Since that time the railroad has been changed from narrow gauge to standard gauge, a branch line from Newark to Dunbarton Point has been built, and more locomotives and trains have been run, so that at the present time the railroad takes and uses an average of fifty thousand gallons daily.

The respondents, in support of the judgment, advance the following propositions: 1. That the language of the instrument of May 10, 1888, does not constitute an agreement by the Spring Valley Water Works to furnish water to the railroad company. 2. That the defendants are corporations engaged in supplying water for public use of which the water in controversy constitutes a part, and that a contract by such public utility corporation to furnish water from its supply perpetually, is opposed to public policy and, consequently, invalid. 3. They also claim that the case is an action to enjoin the breach of a contract, which, under section 3423 of the Civil Code, cannot be maintained, unless the facts would support an action for its specific performance, and that it does not appear that the consideration was adequate, or that the contract was just and reasonable, or that there is not an ample remedy at law by an action for damages after the threatened breach occurs.

1. The claim that the instrument does not constitute an agreement by the Spring Valley Water Works to furnish water to the plaintiffs is untenable. The railroad companies were the owners of the land through which the water works desired to lay a main in which to carry water. The grant by the railroad company to the water works consisted of an easement in their land to lay and maintain, perpetually if desired, the said water-main along the line described, which passed through Newark near the plaintiffs' station there, and to carry its water therein. It declares that this easement was

granted "in consideration of the construction and mainte-
nance of a hydrant at Newark station and the free use of
water therefrom for fire and station and all other railroad pur-
poses." This language necessarily implies that the hydrant
was to be constructed and maintained by the water works and
that the free use of water therefrom was to be of the water
which the water works was to have flowing through said main.
"A contract must be so interpreted as to give effect to the
mutual intention of the parties as it existed at the time of con-
tracting, so far as the same is ascertainable and lawful." (Civ.
Code, sec. 1636.) The intention that the water works was to
furnish the water of which the plaintiffs were to have the free
use is clearly ascertainable from the contract itself. To hold
that the instrument does not express such agreement would not
give effect to its obvious intention, but would defeat it.

The nature of some of the elements of the right thus granted
by the water works to the railroad companies is well estab-
lished. The right granted to the water works to lay and
maintain the pipe-line in the land, and to conduct water
therein, was a species of real property, incorporeal in nature.
The pipe and the water while passing through it were cor-
poreal in character and were real property belonging to the
water works. (*Stanislaus W. Co.* v. *Bachman*, 152 Cal. 716,
725, [15 L. R. A. (N. S.) 359, 93 Pac. 858]; *Copeland* v.
*Fairview Land Co.*, 165 Cal. 148, 154, [131 Pac. 119].) The
instrument was, in legal effect, in the nature of an exchange,
a grant of a right of way for the water conduit by the railroad
companies to the water works, and a grant by the water works
to the railroad of a water right consisting of a right to take
a part of the water flowing in the conduit, by means of the
connecting pipe, as needed. The water right was a burden
or servitude upon the pipe-line and water system of the water
works, a right to a part of its water. (Washburn on Ease-
ments, 3, 5, 305; Civ. Code, sec. 801.) As to the respective
rights, upon the completion of the pipe and the running of
water therein the respective agreements became executed, not
executory. The right of way and its use thereafter was ac-
cepted by the water works as payment in advance for the
future use of the water by the railroad companies. These
respective rights were indefinite and unlimited as to time, but
they were not necessarily perpetual. There was no covenant
or agreement by the water works to lay the pipe-line, or to

carry water therein, or to maintain either the pipe-line, or the flow of water therein, for any period of time, or at all. Its only agreement was that after it had laid the conduit, and when it did carry water in it, the plaintiffs should have free use of that water for the purposes designated. The water works could at any time change the route of its main to other lands without violating the contract, and would thereafter have been relieved of the burden. The water works was authorized to own, sell, and distribute water to public use, and the water in question was a part of the water supply which it held, managed, and controlled for that purpose. It could at any time, by purchase, or, if necessary, by condemnation suit, acquire a new route for its main. But so long as it maintained the route given, the right of plaintiffs was a burden or servitude thereon which entitled them to take and use water from the main to the quantity necessary for the purposes specified.

2. We perceive no valid reason for holding the contract void because opposed to public policy. It is not claimed that it was not freely made, or that it was procured by fraud or undue influence. There is nothing inherently wrong in such a contract to give water service upon payment in advance. No regulation or rule of any public authority empowered to control or regulate public water service in Alameda County had or has forbidden it. There is no claim that the taking of this water by the plaintiff has reduced the supply remaining in control of the defendants below the quantity necessary or convenient for the other consumers entitled to it or applying for it, or that the supply to plaintiffs has not been from a surplus that would have been unused but for their taking. Where the rates for water devoted to public use have not been fixed by public authority, the person in charge of the use and the consumer may freely contract regarding the price of service and the manner of payment, and such contracts will be deemed valid by the courts and may be enforced by any appropriate mode. (*Fresno Canal etc. Co.* v. *Park*, 129 Cal. 437, [62 Pac. 87]; *Stanislaus W. Co.* v. *Bachman*, 152 Cal. 725, 730, [15 L. R. A. (N. S.) 359, 93 Pac. 858]; *Leavitt* v. *Lassen Irr. Co.*, 157 Cal. 82, 90, [29 L. R. A. (N. S.) 213, 106 Pac. 404].)

It is true as said in the Leavitt case, that the person in charge of the public use is a trustee in charge of a public trust, "the agent in the execution of this public trust," and that he cannot lawfully burden this trust, or the property devoted to

and held for the purposes of that trust, by imposing obligations upon himself, or burdens upon the property, which destroy or impair the public use or the public interest therein. And so he cannot convey it away absolutely to private use, or contract for a preference to one consumer to the detriment of others in the public use. Any contract purporting to give such preference in the public use, or to transfer a part of the dedicated public supply to private use, is subject to revision by competent public authority, to the end that the public service shall not be unjustly discriminatory, or unreasonable, and that the private use shall not interfere with the public use, and such contracts may, by such authority, be reformed accordingly, to make them conform to the public interest. (*Turtle Creek Borough* v. *Pennsylvania W. Co.,* 243 Pa. 408, [90 Atl. 194] ; *Bellevue Borough* v. *Ohio V. W. Co.,* 245 Pa. 117, [91 Atl. 236] ; see, also, *Fresno etc. Co.* v. *Park,* 129 Cal. 437, [62 Pac. 87] ; *Stanislaus W. Co.* v. *Bachman,* 152 Cal. 725, [15 L. R. A. (N. S.) 359, 93 Pac. 858].) In the case first cited it is said that the power to fix rates and regulate public service of water devoted to public use ''carries with it jurisdiction to determine the reasonableness of charges, irrespective of prior contracts; to that extent such contracts may be reformed.'' But until such public authority has intervened and modified such prior contract, it will be recognized as valid, and enforced in the courts, as declared in our decisions above cited. The power to revise and reform contracts of public service water companies, in the interest of the public, applies as well to a contract creating or attempting to create an easement in the water held for public use as to any other disposition thereof.

In this state this power of revision and regulation is now, and was when this controversy arose, lodged in the railroad commission by the Public Utilities Act of 1911. (Stats. 1911, Spec. Sess., p. 18; Const., art. XII, sec. 23.) The act provides, however, that it shall not operate to release or waive any right of action of any person for any right ''which may have arisen or accrued or may hereafter arise or accrue under any law of this state.'' (Sec. 74.) It follows that, although the parties may apply to the commission for relief, they may also resort to ordinary actions or proceedings in the courts for the enforcement of rights arising under contracts allowed by

the commission to remain in force relating to the service of water.

The result is that the plaintiffs are possessed of an easement or servitude upon the water system of the defendant Spring Valley Water Company by virtue of which they are entitled to share in the water flowing in the main, to the extent required for the uses mentioned in the contract, that they had been in the enjoyment thereof for twenty-five years at the time the defendant first disputed their right and that they still have the right to such use without charge.

A question may arise in the further prosecution of the case whether the plaintiffs are now entitled to more water than would have been necessary to supply the narrow gauge road owned and operated by the plaintiffs in 1888, when the contract was made, if it had not been changed to standard gauge, and whether they are entitled to water for the line crossing at Newark which was afterward constructed. We cannot determine these questions upon this appeal. The facts necessary for that purpose are not found.

In the oral argument respondents' counsel cited a number of cases to the effect that a contract whereby one party agrees to supply a commodity to the other, as required, at a fixed price, whether paid in advance or payable on delivery, and is silent as to its duration, it may be terminated by either party after a reasonable time and upon reasonable notice. (*McCullough etc. Co.* v. *Philadelphia Co.,* 223 Pa. 336, [72 Atl. 633] ; *Turtle Creek Borough* v. *Pennsylvania W. Co.,* 243 Pa. 408, [90 Atl. 194] ; *Bellevue Borough* v. *Ohio V. W. Co.,* 245 Pa. 117, [91 Atl. 236] ; *Echols* v. *New Orleans etc. Co.,* 52 Miss. 614.) The principle is well established and is applicable in all cases where the contract is properly classified as an agreement to buy and sell personal property. It does not apply to a case like the present where, as we have seen, the contract creates an easement or servitude in real property and the supposed buying and selling of the water consists merely in the continued enjoyment of the easement. In the McCullough case above cited the facts were similar to the case at bar, except that in return for the right to lay and maintain a pipe-line for carrying natural gas, the other party was to have gas for fuel in its factory at certain fixed rates, but was silent as to the time it was to continue in force. The court in that case evidently considered the agreement to furnish gas as an agree-

ment for the sale of personal property, and its decision was based wholly on cases of that character. It was not treated on the theory that the right to receive gas was an easement in the gas company's system. In the other Pennsylvania cases cited the contracts were made by a public service company with a municipality to furnish water to consumers at fixed rates. In that state, at that time, the courts had jurisdiction to regulate the water service and fix rates. The cases were decided partly upon the theory that the service of water by such companies was a matter of public concern, that the contracts were subject to revision in the public interest by competent public authority and were not enforceable against that interest. It was also said that being indefinite as to time the contracts were terminable by either party on reasonable notice. The personal property cases were referred to in support of this principle, and the cases were obviously decided upon the hypothesis that they involved the sale and delivery of personal property and not the mere enjoyment of an easement. In none of the cases was the right to receive the thing to be furnished understood to be a vested estate in realty of the nature of an easement. As we have said, the agreement is subject to revision in the public interest by the railroad commission. But the courts can only declare and enforce the rights as they exist. Until some order to the contrary is made by the commission, the plaintiffs are entitled to the use of the water as provided in the agreement without payment of anything other than the original consideration.

The judgment and order are reversed.

Sloss, J., Melvin, J., Lorigan, J., Henshaw, J., Lawlor, J., and Angellotti, C. J., concurred.

Rehearing denied.