[Civ. No. 2825.   Fourth Dist.   Nov. 28, 1941.]

THE CITY OF CORONADO (a Municipal Corporation), Plaintiff and Respondent, v. THE CITY OF SAN DIEGO (a Municipal Corporation), Appellant; CALIFORNIA WATER & TELEPHONE COMPANY (a Corporation), Defendant and Respondent.

D. L. Ault, City Attorney, and Phil D. Swing for Appellant.

Shelley J. Higgins, City Attorney, and Lindley & Higgins for Plaintiff and Respondent.

Bacigalupi, Elkus & Salinger and Philip Storer Thacher for Defendant and Respondent.

BARNARD, P. J.—This is an action for declaratory relief, to establish that certain waters have been dedicated to the use of the plaintiff, and to quiet its title thereto.

The material facts may be briefly summarized as follows: In 1886, the Coronado Water Company was organized for the purpose of supplying water to consumers in an area including what is now the city of Coronado. From 1886 to 1888 that company furnished water to the inhabitants of that area, which water it purchased and brought through a submarine pipe line built across San Diego Bay and running from the foot of Market Street in San Diego to the Coronado Peninsula. In 1888, this company purchased lands riparian to the Otay River, near the point where that river flows into San Diego Bay, and developed wells on said lands. From the latter part of 1888 to 1908 this water company secured practically all of its entire supply of water from these Otay wells, taking the water around the head of San Diego Bay and up the Strand to the present location of the city of Coronado.

In 1886, the Otay Water Company was organized for the purpose of acquiring water rights on the Otay River and Cottonwood Creek, and furnishing water to inhabitants "within the county of San Diego." That company filed notices of appropriation of waters on the Otay River, including among the named places of intended use the cities of San Diego and Coronado. The Southern California Mountain Water Company, which was incorporated in 1895, acquired the rights of the Otay Water Company and filed additional notices of appropriation of the waters of the Otay and Dulzura Rivers and of Pine Creek and Cottonwood Creek, also naming among the places of intended use the cities of San Diego and Coronado. In 1897, that company constructed a dam on the Otay River about twelve miles above the location of plaintiff's Otay wells. This dam and its reservoir will be referred to as the Otay Dam. In March, 1908, the Southern California Mountain Water Company, which for some time had been serving water to the city of San Diego, began to

supply the Coronado Water Company with practically its entire water requirements from the Otay Dam. In the beginning there was no written contract covering the sale of this water.

On February 6, 1912, the Southern California Mountain Water Company, as first party, and the Coronado Water Company as the second party, entered into a written agreement, which is one of the controlling factors in this action. This contract provided that the first party agreed to sell and deliver to the second party and the second party agreed to buy from the first party ''all the water which said party of the second part may require to furnish and supply all the demands of its present consumers'' between two points not material here, and ''also all water for domestic and irrigation purposes for use'' on certain portions of the Coronado Peninsula, including the present city of Coronado. The contract provided that such water was to be delivered ''at the junction and connection of the Coronado Water pipe line with the main water pipe line running from the Lower Otay Dam to the city of San Diego.'' This point of delivery is between the Otay Dam and plaintiff's Otay wells, and is known and referred to as the Coronado ''Y''. It was provided that the contract was to be a continuing one for the purpose of supplying water to those then being supplied with water by the second party ''and particularly the city of Coronado and its inhabitants,'' and ''without any limitation as to the time when such obligation to so furnish water shall cease,'' and that ''the only changes to be made herein are as to the compensation to be paid and received for such water, as herein provided.'' It was further provided that for ten years water was to be furnished at a certain price and thereafter at such rates as might be agreed upon by the parties or in the event they were unable to agree then at such rates as should be fixed by arbitration, the manner of arbitration being provided for.

Later, in 1912, the city of San Diego purchased the Southern California Mountain Water Company's rights and water system on and in connection with the Otay River and the other streams above mentioned, paying some $4,000,000 therefor and taking the same subject to the above-mentioned contract of February 6, 1912. The transfer of this water system to the city of San Diego was consented to by the Railroad

Commission on the city's express stipulation "that any legal claim for water which may be enforced against the company may likewise be enforced against the city." Thereafter, the city of San Diego expended several million dollars in building the Barrett Dam, in improving the Otay Dam and the Morena Dam, and in other improvements to this water system. After the execution of the contract of February 6, 1912, the Coronado Water Company took all the water required by it for distribution to its consumers from the Otay Dam, purchasing the same under the terms of that contract at first from the Southern California Mountain Water Company and later from the city of San Diego, until some time in the year 1916, when the Otay Dam was washed out in a flood. After that occurrence the Coronado Water Company supplied most of its requirements from its Otay wells until a new Otay Dam was completed in 1919. It then resumed taking water from the Otay Dam but continued pumping from its Otay wells for a part of its requirements. This continued until 1935. From 1920 to 1935 about 30% of the water distributed by Coronado Water Company was pumped by it from its Otay wells and the remainder was purchased from the city of San Diego under the contract of February 6, 1912.

In 1922, the Coronado Water Company began to plan to develop a new supply of water from wells near the Tia Juana River, a few miles easterly from its Otay wells. In 1935, the defendant, the California Water & Telephone Company, purchased the business of the Coronado Water Company and began the development of water from wells in the Tia Juana River basin. In July, 1936, that company began using water from that source in its distribution system supplying the peninsula and the city of Coronado and, thereafter, rapidly substituted such water for the water previously purchased from the city of San Diego under the contract of February 6, 1912, with the result that by 1939 approximately 90% of its water was obtained from that source and about 10% was purchased under the contract of February 6, 1912.

On July 26, 1934, the Coronado Water Company had filed an action against the city of San Diego seeking an order directing said city to proceed with an arbitration for the purpose of fixing the rate to be paid for water purchased from that city under the contract of February 6, 1912. On May 8, 1935, a judgment was entered in that action directing the

city of San Diego to proceed to arbitration and to appoint its arbitrator within twenty days. No appeal was taken and the city of San Diego appointed its arbitrator. A settlement was negotiated between the parties and on March 17, 1936, the council of the city of San Diego passed a resolution approving a settlement of the action referred to and directing the city manager and city attorney to execute the proper documents to carry out the settlement agreement on the following basis and conditions: 1. ''The City of San Diego will continue the sale of water at the Coronado 'Y' and at Atlantic and Market Streets in the City of San Diego to California Water & Telephone Company as successor in interest to the Coronado Water Company, at the rate of fifteen cents per hundred cubic feet, irrespective of the total quantity of water delivered, and will cancel its purported charge at twenty-five cents per hundred cubic feet heretofore imposed upon the Market Street delivery.'' 2. That the water company agrees that it will not institute arbitration proceedings for a period of at least five years and further represents, without binding itself beyond that period, that its present intention is not to institute such proceedings for a period of years thereafter. 3. ''California Water & Telephone Company will endeavor to develop an additional and independent supply of water to lessen the burden now resting upon the City, but such development shall not be construed as in any way changing the basic contract dated February 6, 1912, relating to the supply of water to the Coronado and other areas.'' Based upon the agreement thus approved by the city council a stipulation was filed dismissing the action commenced on July 26, 1934, and in which it was further stipulated that neither that stipulation nor the dismissal of that action ''shall operate to change or alter whatever legal effect the decision and order of the court, made and entered herein, might otherwise have in any future proceedings of a similar character'' instituted by the plaintiff or its successor against the city of San Diego.

Shortly after that settlement agreement the defendant water company completed its wells in the Tia Juana River basin and began its use of water therefrom, with a corresponding decrease in the amount of water it purchased from the city of San Diego under the contract of February 6, 1912. On January 19, 1937, the City Council of San Diego passed

a resolution directing the city attorney to draft a resolution terminating the contract of February 6, 1912. Shortly thereafter, the present action was begun by the city of Coronado.

The complaint alleged many of the facts above set forth and prayed for a judgment decreeing that all of the waters impounded by the Otay Dam had been dedicated to its use and quieting its title thereto, and asking the court to construe the contract of February 6, 1912, and to decree that under that contract the city of San Diego is obligated to supply to the defendant water company, as the successor of the Coronado Water Company, such amounts of the water stored by the Otay Dam as may be required by it to supply the needs of the plaintiff and its inhabitants. The defendant water company filed an answer denying that the plaintiff had the rights it claimed in the waters stored by the Otay Dam except only the right to be served from said waters by said defendant, and asserted in itself a prior and paramount right to the water stored by the Otay Dam sufficient to supply all of its requirements. It further asserted that the contract of February 6, 1912, was in full force and effect and that it obligated the city of San Diego to furnish it with all of the water required by it to meet the needs of its customers, including the city of Coronado, but that it was not bound to take more water than it desired to take and that it could supply its needs as far as possible from other sources, especially from its project in the Tia Juana River basin. The answer of the city of San Diego denied that the water company or the city of Coronado had any prior or superior rights to the waters of the Otay River and the other streams mentioned, alleged that the city of San Diego had a prior right to said waters, and further admitted the validity of the contract of February 6, 1912, but alleged that under the terms of that contract the water company was obligated to take its entire requirements from the city's Otay system, and then alleged that since the water company had refused to do this and was taking most of its water from a new source it had broken that contract.

After a trial, a large part of the evidence being documentary, the court found in all respects in favor of the plaintiff and entered its judgment accordingly. The findings are voluminous and it is sufficient for our present purposes to say that the facts found are substantially the same as those

set forth in the above statement of facts. In addition to what has been mentioned the court also found that from 1912 up to and including January, 1937, the city of San Diego has a number of times admitted before the courts and the Railroad Commission of this state that the contract of February 6, 1912, was a legal and binding obligation upon said city; that during the year 1913 and all of the years from 1916 to 1937 the city of San Diego has been and still is delivering water under said contract at two points of delivery, namely at the Coronado ''Y'' and at the foot of Market Street; that the city of San Diego at all times, except when prevented by the act of God, has been and now is ready and willing to deliver to the defendant water company (and its predecessor) all waters required by it for serving its consumers, including the city of Coronado; that the city of San Diego has expended about $4,000,000 in improving this water system which has resulted in increasing the safe net yield of said system from 5.25 to 13.6 million gallons daily; that the Coronado Water Company and its successor, the California Water & Telephone Company, did not violate any of the terms of the contract of February 6, 1912, by taking water from sources other than the Otay Dam; and that while water from the Otay Dam has been supplied to the city of San Diego continuously since 1906, neither the contract under which such deliveries started nor such continued delivery has dedicated any of the waters of the Otay system to the public use of supplying the city of San Diego or any of its inhabitants.

As conclusions of law the court found that all or so much as may be necessary of the waters of the Otay and Dulzura Rivers, whether impounded by the Otay Dam or not, and of the waters of Pine Creek as impounded by Barrett Dam, and of Cottonwood Creek as impounded by Morena Dam, have been dedicated forever to the use of the city of Coronado and its inhabitants; that there is vested in said city and in its inhabitants the right to have delivered forever said dedicated waters; that said city is entitled to a judgment quieting its title to the right to said waters and restraining the defendants from ever asserting or claiming anything contrary to such right; that the contract of February 6, 1912, as supplemented by the settlement agreement in 1936, is a binding contract and in full force and effect; that the defendant water

company and its predecessor, the Coronado Water Company, have not breached that contract by supplying water from other sources to the city of Coronado; that the defendant city of San Diego has no right to terminate the contract because a part of the water used by the defendant water company in supplying the city of Coronado was not taken from the Otay system; that the city of San Diego accepted a transfer of the Otay system subject to, and assumed all burdens created by, the contract of February 6, 1912, and is bound to perform all the terms of that contract as written and as supplemented by the agreement of 1936; that among the terms thereof which the city of San Diego is legally bound to perform is the duty of selling and delivering from this system to the defendant water company all the water which it may require to supply its consumers, including the city of Coronado; that the city of San Diego is bound to deliver said water at either or both of two places, namely at the Coronado "Y" and at the foot of Market Street; that there is nothing in the contract which forbids the water company from developing and using water from other sources; and that by so doing the city of Coronado and the defendant water company have not lost or surrendered any of the rights now vested in them.

A judgment was entered substantially in the language of the conclusions of law and the defendant city of San Diego has appealed from that judgment.

The first provision of the judgment quiets title in the city of Coronado to all the waters of the appellant's Otay system which for many years was the principal, if not the sole. source of supply for the city of San Diego, and including waters which long after the execution of the contract of February 6, 1912, were developed from streams other than the Otay and Dulzura Rivers and a part of which were brought in from the other water sheds, if and when these waters may in the future be needed by the city of Coronado, and the appellant city is enjoined from ever asserting any claim to the contrary. The complaint asks such relief only with respect to the waters of the Otay and Dulzura Rivers as impounded by the Otay Dam. The first conclusion of law, which is carried into the judgment, not only gives that relief but extends it to all of the waters of those rivers whether impounded by the Otay Dam or not, and also to the waters of Pine Creek as impounded by Barrett Dam and of Cottonwood Creek as

impounded by the Morena Dam. At the same time the court found that from 1906 to the date of the trial waters from these streams and from this water system had been continuously supplied to the city of San Diego and its inhabitants, but that such delivery and use of this water did not "dedicate any of the waters of said Otay system to the public use of supplying" the city of San Diego or any of its inhabitants. This was found although it clearly appears that the appellant and its predecessors had filed the original appropriation notices on these streams and had spent some $8,000,000 in constructing this water system, and that the greater part of the water thereof had been continuously served to and used by the city of San Diego and its inhabitants for some thirty-four years. The preference and prior right to all of this water thus given to the city of Coronado not only goes beyond the prayer of the complaint, but is entirely without evidentiary support and is directly opposed to all established principles of law governing the dedication of water and the acquisition of water rights. Every argument of the respondents in support of this part of the conclusions of law and judgment applies also in favor of the right of the city of San Diego and its inhabitants to the continued service of the greater part of this water.

Assuming that the delivery to the city of Coronado of some water taken from wells near the mouth of the Otay River, and later of other waters from the Otay system, under oral and written agreement, has resulted in the dedication in a legal sense of a portion of the water of that river to the use of consumers in that area, this cannot constitute such a dedication of the entire water of that river and its tributaries, including water from outside sources which has been brought into the Otay system, especially where equal or superior rights in favor of other communities have intervened and have been exercised and confirmed by long continued use. There is nothing in the many authorities cited on this subject which would support a contrary view.

Moreover, the contract of February 6, 1912, under which most of this water has been delivered for use in the city of Coronado, specifically recognized and protected the rights of the appellant city in a provision thereof which is to govern in the event of any shortage of water. While the effect of the judgment herein, in the event of a shortage of water, is

to give to the city of Coronado prior rights to all the waters of the Otay-Barrett-Morena system to the extent of denying San Diego any water therefrom, if necessary, the contract itself provided, in the event of a water shortage, "that the water furnished by the said party of the first part to all its consumers, shall be equitably apportioned among all its consumers, to the end that the said party of the second part shall have and receive for the use of its consumers, and especially for the use of the said City of of Coronado, and the inhabitants thereof, the same equitable proportion of the water impounded in the reservoirs, and subject to use, as the City of San Diego, and its inhabitants receive."

If it was desired to adjudicate the rights of the city of Coronado, independent of this contract, to a portion of these waters through dedication and use, evidence should have been received to show the exact position and rights of all the parties, with appropriate findings and conclusions thereon. As the matter now stands, neither the evidence nor the law supports this part of the findings, conclusions and judgment.

The appellant next contends: (1) that the contract of February 6, 1912, clearly requires the respondents to take from the Otay system all of the water which they may need; (2) that even if evidence could be received to explain the meaning of the contract the action of the parties thereto, at the time of and after its execution, supports only the conclusion that these parties so understood and interpreted the contract; (3) that if not so interpreted the contract is void for lack of mutuality; and (4) that the court erred in holding that the respondents have a right to take a part of their requirements from this system but are not obligated to take any particular amount of water therefrom.

For present purposes we may assume that the contract in itself, and as interpreted by the parties thereto at the time, was intended to provide that the respondent water company and its predecessor should take from this system the full amount of water which it needed to supply its customers within the area named. It clearly appears that the original parties to that contract started out by furnishing and taking all of such water, and that when the city of San Diego took over the system and assumed the burden of this contract this practice was continued until it was prevented by a flood in 1916. From that time until 1919, all of the water required by or for the respondents was pumped from the Otay wells.

After the Otay Dam was rebuilt in 1919, and until 1936, the respondents took only a part of their requirements from the Otay system and continued to pump a part from the Otay wells. The amount of water thus pumped by them during these years varied from a maximum of 56.05% in 1935 to a minimum of 10.71% in 1926. It clearly appears that this was done with the knowledge of the appellant. As early as 1919 the water officials of the city of San Diego commended the Coronado Water Company for relieving the burden on the Otay system by developing an independent supply of water. In March, 1936, in the settlement of other litigation over the rates to be paid for water supplied to the respondents, it was specifically agreed that the respondent water company would endeavor to develop an additional water supply for the purpose of lessening the burden then resting upon San Diego's water system.

The appellant has taken over the Otay system subject to the burden of supplying the respondents' requirements as set forth in the 1912 contract. Between 1920 and 1936, and even thereafter, the appellant knowingly acquiesced in the respondents' taking only a part of such requirements from this system and encouraged this action as relieving it from a part of its burden. This policy was carried into a definite agreement in 1936, which agreement contained the specific provision that this development of additional water should not be construed as in any way changing the basic contract of February 6, 1912. The development of such additional water would necessarily change the amount to be delivered and purchased under the prior contract and would necessarily change the provision of the prior contract that the respondent water company was to take its full requirements from the Otay system. The only reasonable construction of this portion of the new agreement of 1936 is that the respondents should have the right to develop other waters, and that in so doing and in thus conferring a benefit upon the city of San Diego it was giving up no rights which existed under the basic contract and that this contract should continue in force, as before, with the water company's right to take such remaining water as it might need for its contract purposes remaining unchanged.

It must be held that by this conduct, continued over some sixteen years, and by the new agreement in consideration of

the settling of other litigation, the parties so modified or confirmed the original contract of February 6, 1912, whatever its original meaning was, as to agree that the respondent water company might take from the Otay system such amounts of water as it needed and had not developed elsewhere, and that it need not take all of its water requirements from this system. Under these circumstances, it must be held that the appellant city is estopped to insist now upon a different interpretation of the contract as so modified or as so confirmed. ■ In this connection, the appellant contends that the respondents may not rely upon any such modification of the contract of February 6, 1912, because no such modification was pleaded. It is true that the only contract mentioned in the complaint is the original contract of February 6, 1912, and that a modification thereof was not specifically pleaded. However, there were other allegations in connection with the respondent city's action to quiet title to its water rights and the question of modification, with its effects, was rather thoroughly gone into at the trial. Under the record, it cannot now be held that this matter was not in issue or that it was not material to the controversy between the parties.

■ The question remains whether this contract, as so modified or confirmed, is void for want of mutuality since it leaves the amount of water which is to be taken variable and uncertain. The appellant relies on general principles of law requiring mutuality of contracts for the sale of commodities so that the amounts to be delivered and paid for may be determined or determinable, as otherwise the agreement would be purely unilateral or amount to a mere option. It argues that this contract, if interpreted as requiring the water company to take and pay for all water it may require for the purpose of serving the communities named in the contract, would be sustainable (citing *Marin Water etc. Co.* v. *Town of Sausalito,* 168 Cal. 587 [143 Pac. 767]), but insists that if interpreted as permitting the water company to take only that part of its requirements which it does not develop from other sources it is void for uncertainty and lack of mutuality.

In most agreements between individuals and relating to ordinary wares, there is a good reason for the general rule pointed out. We are here confronted with a different situ-

ation which justifies an exception to that rule if that be necessary. While water is a commodity its sale is in many instances a matter of public policy and subject to restrictions and to accrued rights which may well necessitate the application of somewhat different rules from those applicable to ordinary commercial transactions. In this case, the respondents had certain rights in connection with the waters of the Otay and Dulzura Rivers before this contract was entered into. These rights were recognized and confirmed in the contract which provided for a continued service of water to the area named. The city of San Diego accepted the Otay system subject to the burden of supplying certain waters for the purpose of continuing the service thereof to the inhabitants of the city of Coronado. (*San Diego* v. *La Mesa etc. Irr. Dist.*, 109 Cal. App. 280 [292 Pac. 1082].) The contract was valid when entered into and no good reason appears why a modification thereof, the effect of which is merely to relieve the party having the duty of furnishing the water from a part of that burden, should be held to be invalid. In this state, the public has an interest in the use of water and public policy favors the conservation of water and requires that all waters be put to a reasonable use. In carrying out this policy a court may protect the right to the future use of water without compelling waste in the meantime. (*Peabody* v. *City of Vallejo*, 2 Cal. (2d) 351 [40 Pac. (2d) 486], at 371.)

In line with this policy a court should not compel a public utility or a city to take water it does not need under the penalty of losing its right thereto when the interested parties have agreed to the contrary. As between a city operating a water system and another city, or public utility supplying water for such other city, an agreement to supply water to the extent it may be needed only should not be void for lack of mutuality merely because the amount needed may be a variable quantity. As a matter of fact, the amount of water required in a particular year over and above the amount developed from other sources will be as easy to ascertain as the total amount required in future years where no other water is developed. To permit such a contract is in the interest of conservation of water and is in line with our public policy of putting water to its best and most universal use. We therefore hold that the contract as found by the court to be

now existing and binding upon the appellant is not void for the reason assigned.

It would seem that this contract, as found by the court to have been modified by the subsequent agreement, is more favorable to the city of San Diego than was the original contract and that that city is thereby relieved of a considerable part of the burden it assumed in taking over the Otay system. An unusual feature of this case is that one party, instead of trying to deprive the other party of water, is insisting that the other party take more than it needs or wants. While the appellant insists that it desires the respondents to take all of their requirement of water from the Otay system, it wants the contract declared terminated if less than the total amount of such requirement is taken. In its answer the appellant offered, in the event of the termination of the contract, to enter into a new agreement by which it would undertake to supply any deficiency that might exist after the respondents had received such water as they could from other sources, such new agreement to provide for adequate and reasonable rates for the water. In effect, it is argued in the briefs that the appellant is willing to do this but that this would constitute a stand-by service, that the court's interpretation of the contract practically imposes upon the appellant the duty of maintaining such a stand-by service, and that such a service is more expensive to maintain and should be compensated for at higher rates than those provided for in the contract in question. Assuming this to be true the contract, as found to be in force by the court, does not permanently fix the rates and under its terms these rates may be now changed at any time by agreement of the parties or through the arbitration which is provided for therein.

The court found that in 1886 a submarine water line was constructed across San Diego Bay from what is now the city of Coronado to the foot of Market Street in San Diego, and that ever since that pipe line has been connected with San Diego's water system at that point. It was further found that since 1907 water from the Otay system has been delivered at the foot of Market Street for use in Coronado and that since 1908 water from Otay Dam has also been continuously delivered at the Coronado "Y", except as temporarily interrupted by flood damage in 1916. Apparently based upon these findings, and in passing upon the burdens assumed by the appellant in taking over the Otay system

subject to the contract of February 6, 1912, the court, in its conclusions of law, found that "the City of San Diego, is legally obligated to deliver said water at either or both of two places or points of delivery, namely; the Coronado 'Y' and the junction of the submarine line across the bay of San Diego with the distribution system of defendant, the city of San Diego, at the foot of Market Street." This conclusion of law is carried into the judgment and the effect thereof, if allowed to stand, might be interpreted as giving the city of Coronado the right, at its option, to compel the city of San Diego to deliver all or any part of the waters it may be required to deliver under the contract at the foot of Market Street rather than at the Coronado "Y". Such a judgment is not sustained by any evidence in the case. It appears from the evidence that some water was sold and delivered at the foot of Market Street both before and after the execution of the contract of February 6, 1912. That part which was delivered before 1912 was obviously not delivered under that contract. That contract provided that all waters covered thereby should be delivered at the Coronado "Y", and made no reference to delivery of water at the foot of Market Street. It appears from the evidence that the city of San Diego began delivering some water at the foot of Market Street in 1907, expressly as an accommodation to the Coronado Water Company, in accordance with the terms of an ordinance of the city of San Diego, and that some waters have been delivered at that point each year since 1907, with the exception of two years. The only evidence in this connection is that this submarine pipe line has been maintained for emergency purposes and that water was taken through it only at such times as pressure was reduced to a low stage at the northerly borders of the city of Coronado. It appears that the Southern California Mountain Water Company never delivered water to the respondents through this submarine line either before or after the contract of February 6, 1912, was executed. While there is evidence that the city of San Diego delivered water through that pipe line before and after the execution of that contract there is no evidence that it was done under or pursuant to the terms of that contract. In connection with the settlement of the other litigation in 1936 one thing agreed upon was that the city of San Diego "will continue the sale of water at the Coro-

nado 'Y' and at Atlantic and Market Streets in the city of San Diego'' at the same rate of compensation. There was no issue raised by the pleadings herein to the effect that the respondents were entitled to receive all of their water or so much as they may desire at the foot of Market Street, or that they were entitled to receive any water at that point under the contract of February 6, 1912. The purport and effect of the agreement between the parties in 1936 is that the appellant will continue the sale of water at both points. The only reasonable effect of this agreement in this connection would be that the respondents would have a right to have the delivery of water at the foot of Market Street continued to the extent such deliveries had been made in the past. The adjudication of the exact amount of water which must be thus delivered, if desired, would require other and more definite findings than those appearing in the record and that part of the judgment goes entirely too far and must be reversed.

Most of the facts are not disputed and there would appear to be no necessity for a new trial unless the parties desire to retry the issues as to what part of the waters impounded by the dams in the Otay system have been dedicated to the use of the respective parties, independently of the contract, and unless the parties desire an adjudication as to the exact amounts of water which the appellant may be compelled to deliver to them at the foot of Market Street rather than at the Coronado ''Y''. Unless it is desired to settle such questions in this action the findings and conclusions of law may be amended or stricken in accordance with the views herein expressed and a judgment entered in accordance with the findings and conclusions as thus corrected and amended. The decision as to whether the case shall be retried in whole or in part should rest with counsel, and since it is hardly possible to correct the findings in this court and modify the judgment accordingly, it seems advisable to reverse the judgment and remand the cause for appropriate action in the trial court.

The judgment is reversed.

Marks, J., and West, J. *pro tem.*, concurred.