[Civ. No. 5160.   Fourth Dist.   Jan. 24, 1956.]

P. R. SAWYER et al., Respondents, v. THE CITY OF SAN DIEGO, Appellant.

J. F. DuPaul, City Attorney, Shelley J. Higgins, Assistant City Attorney, and Aaron W. Reese, Deputy City Attorney, for Appellant.

Swing, Scharnikow & Staniforth and Phil D. Swing for Respondents.

MUSSELL, J.—In this action for declaratory relief, plaintiffs, who are property owners in the subdivision known as "Del Mar Terrace" in San Diego County, seek a judgment determining the meaning of and the relative rights and obligations of the parties under a 1920 contract which the

city made with plaintiffs' predecessor, the J. D. Millar Realty Company.

Plaintiff Del Mar Terrace Public Utility District is a public utility district organized on December 20, 1951, and existing under the laws of California (now embodied in Pub. Util. Code, §§ 15501-17776) with boundaries identical with those of the Del Mar Terrace subdivision. The district sues in behalf of itself and the water users within the subdivision. The subdivision map was filed for record with the county recorder of San Diego County on February 5, 1913.

In 1920 the city of San Diego, hereinafter referred to as city, acquired by contract the right to take three million gallons per day of water from Lake Hodges on the San Dieguito River. In order to bring this water into the city it was necessary to construct a pipe line passing over certain portions of the Del Mar Terrace subdivision. On July 3, 1920, the city (party of the second part) and the J. D. Millar Realty Company (party of the first part) entered into the written agreement which is involved herein. The agreement recites the ownership by the city of its water system and its desire "for the purpose of improving its water system and increasing its capacity and facilities for impounding and conserving and distributing water" to construct a main pipe line to pass over certain portions of said subdivision, and the agreement proceeds to grant to the city "the right of way for said main pipe, and the right to the use of the lands therein described, together with the right of ingress and egress for the purpose of making surveys, locating, putting down, constructing, reconstructing, maintaining, operating, and repairing of said main water pipe and taps . . . and for all other purposes and uses . . . necessary and incidental to the construction, maintenance and operation of said city's main pipe, and to its successors and assigns forever." It was further agreed therein that over the parcels of the subdivision described the city "shall extend one of its main water pipes, to be so located as to do the least damage consistent with good engineering, and whenever any property shall be destroyed or damaged, it shall be paid for at its actual value," and that the right of way was to be used "for the said extension of said pipe line and not otherwise." It was further agreed "that the owners of said real estate or their successors in interest over which the right of way is granted shall at all times have the right to take water for use upon the land known as Del Mar Terrace at the same rate and subject to like conditions, rules and regulations as those fixed and made applicable from time

to time to other consumers obtaining supplies of water from said pipe line." It was further agreed that "said owners of real estate or their successors in interest over which the right of way is granted shall receive without cost from the party of the second part three (3) taps the location and connection of said taps to be made at the points on said line designated by the party of the first part, upon giving notice to the party of the second part." Four other right of way contracts were entered into by the city with individual lot owners in the subdivision. These four agreements are similar to the contract with the J. D. Millar Realty Company except that they describe the particular lots owned by the individuals mentioned over which the right of way is granted and provide that such owners respectively shall receive without cost from the city one (1) tap, the location and connection of said taps to be made at points on said line designated by the party of the first part (lot owners) upon giving notice to the city.

The city constructed the pipe line described in the agreement and shortly thereafter a tap was installed in the pipe line and water was taken therefrom for use on lands in the subdivision. The owners of lands therein have continued to take water from the city's pipe line for use on their lands and at the time of trial there were approximately 65 owners of real estate and householders within the subdivision who derived their water supply from taps in the city's said pipe line. There are now three 2-inch taps which were installed in accordance with the Millar agreement and this is the only available source of water for the residents of Del Mar Terrace.

In 1948 the residents of Del Mar Terrace organized the Terrace Improvement Club to deal with the city in matters relating to water and the club distributed the water received from the city line to the residents of the subdivision, made collections from the residents and paid the city the monthly water charges. In 1951 the plaintiff Del Mar Public Utility District succeeded the improvement club with the approval of the residents of the subdivision and was recognized by the city as the entity to be furnished with the water and to be billed from month to month for the water service previously supplied through the improvement club. The water was delivered to the residents of the subdivision from the distribution system of the Del Mar Public Utility District. The water service within the subdivision became inadequate and the refusal by the city of a request by the public utility

district for the replacement of one of the 2-inch taps then in use, by a 4-inch tap, led to the filing of the present action.

The judgment of the trial court is, in part, as follows:

"3. That all lands within the Subdivision known as Del Mar Terrace are entitled to take water and be supplied from the Defendant City's main pipe line, in accordance with said right of way agreement between Defendant and said J. D. Millar Realty Company, for use on lands within said Subdivision, and the Defendant City is bound and obligated to deliver said water to the Del Mar Terrace Public Utility District, their authorized representatives."

"4. That the Plaintiffs herein are not entitled to demand Seven (7) taps from which to receive water from Defendant's said main water pipe, but are entitled to a continued water supply at each of the three (3) existing taps for use on the lands known as Del Mar Terrace and Defendant City is bound and obligated to maintain said taps in said pipe line for that purpose."

"5. That the owners of the land known as Del Mar Terrace, and the Del Mar Terrace Public Utility District, as their representative, are entitled to demand, from time to time, the use of three (3) taps of ample size to meet the requirements of their needs for water on the subdivision known as Del Mar Terrace. The Plaintiffs herein are not entitled to have the taps relocated at the City's expense but are entitled to have the existing taps replaced, from time to time, at the City's expense, with larger taps whenever the reasonable needs of the Subdivision require and the City is bound and obligated, from time to time, to make such enlargements in the three taps referred to, as will enable the District to reasonably serve the property owners within the Subdivision.

"That the Defendant City is now bound and obliged under its J. D. Millar Realty Company Agreement, to install forthwith and without cost to the District, a four inch (4″) tap and meter, as a replacement for the existing two inch (2″) tap and meter located in its said main pipe line in Laurel Street at or near Lot 24, Block 6 of said Del Mar Terrace Subdivision, in order to meet the present water requirements of the land owners in said Subdivision."

"7. That the Plaintiffs are entitled, under the terms of said J. D. Millar Realty Company agreement, to receive permanent water service from Defendant City, said water to be delivered to Plaintiff Del Mar Terrace Public Utility District, the representative of the owners of lands within said Del Mar Terrace, at the three (3) taps located in its

said main pipe line and the Defendant City is bound and obligated to so furnish said permanent service.''

''8. That the Defendant City, by its conduct over the many years preceding the time when this controversy arose, is estopped from claiming a right to terminate or discontinue service or delivery of water to the owners of lands in the subdivision known as Del Mar Terrace and it is estopped from so doing.''

The city of San Diego, defendant and appellant, appeals from paragraphs 3, 5, 7, 8, and that part of paragraph 4 which reads ''but are entitled to a continued water supply at each of the three (3) existing taps for use on the lands known as Del Mar Terrace and defendant city is bound and obligated to maintain said taps in said pipe line for that purpose.''

The first assertion of the city on appeal is that the authority of the city of San Diego to serve water outside its boundaries in the year 1920 was limited by the city charter. However, it is conceded in the city's opening brief that by reason of article XI, section 19 of the state Constitution, authorizing a California municipal corporation to engage in the business of supplying its inhabitants with water, it may incidentally supply water ''to consumers residing outside of its territorial boundaries.'' Citing *Durant* v. *City of Beverly Hills,* 39 Cal.App.2d 133, 136-137 [102 P.2d 759], in which it is said:

''There are certain legal principles applicable to the controversy which should be stated at this time. 'A grant of power to provide and supply water to a city and its inhabitants, authorizes a city to carry on a system and supply water to persons outside its limits, whenever it becomes necessary or convenient to do so in order to accomplish the main purpose of supplying water to those within.' (*South Pasadena* v. *Pasadena L. & W. Co.,* 152 Cal. 579, 580 [93 P. 490].) When necessary for its purposes a municipality may purchase an entire water plant or system so that 'after operating the system and supplying the persons entitled to use the water, it could devote the surplus to the use of the inhabitants of the city.' (*Fellows* v. *Los Angeles,* 151 Cal. 52, 64 [90 P. 137]; *South Pasadena* v. *Pasadena L. & W. Co., supra,* 590.) In these operations the municipality is not selling surplus or excess waters to the prior users. The purchase of the system is impressed with a trust and the city, 'with respect to this part of the water, will hold title as a mere trustee,

bound to apply it to the use of those beneficially interested.' (*Id.*, p. 594.) The continued supplying of water to the outside territory, being incidental to the main purpose, is a municipal affair. (*Id.*, p. 594.)''

The provisions of the city charter of 1889, pursuant to which the city acted, were contained in subdivision 29, section 1, chapter II, article II, of that instrument, and are, in part, as follows: ''adopt, enter into and carry out means for securing a supply of water for the use of the city or its inhabitants or for irrigating purposes therein and along the line of its water supply.'' It is held in *South Pasadena* v. *Pasadena Land & Water Co.*, 152 Cal 579 [93 P. 490], that a municipal corporation or public corporation may carry on a system and supply water to persons outside its limits, whenever it becomes necessary or convenient to do so in order to accomplish the main purpose of supplying waters to those within. It appears therefore that the city had the power to enter into an agreement providing that the Millar Realty Company should have the right to take water from the city's pipe line for use on the subdivision lots.

The next contention is that the residents of the city cannot be divested of their rights in a water supply which they have developed. It is stated that by the contract involved the city did not dedicate any of its water supply to any portion of the public residing in the Del Mar Terrace and it is contended that the right of water service under the contract is confined to ''the owner of said real estate or their successors in interest over which the right of way is granted.'' It is further contended that it is only such owner or owners of the land over which the right of way passes or crosses who have a right to water service and such right does not extend to the owners of other land in Del Mar Terrace. These arguments are not persuasive. The record does not indicate that at the time of trial the city was without sufficient water to supply its inhabitants. The J. D. Millar Realty Company was exploiting a subdivision. The city desired to connect with the Lake Hodges water system, acquired by it for public use, for such of its inhabitants as it wished to serve with water available from that source. To do so, it desired to cross the Millar Company's subdivision with its main pipe line. It was to the interest of the Millar Company to obtain water for its subdivision. The city agreed to furnish water not to the J. D. Millar Realty Company only, but to it and its successors in interest, and not for use on any particular lots or blocks but ''for use

upon the land known as Del Mar Terrace.'' The subdivision map of Del Mar Terrace had been recorded and there is no ambiguity in the language used in designating the land upon which the water was to be used.

The next contention of appellant is that the city had no authority or power to make a contract providing for perpetual service of water to areas outside the city's boundaries. In support of this contention the city cites *Southern Pac. Co.* v. *Spring Valley W. Co.*, 173 Cal. 291 [159 P. 865, L.R.A. 1917E 680]. In that case plaintiffs (railroad companies) granted to the predecessors in interest of the defendant Spring Valley Water Company an easement to construct and maintain a pipe line, intended to supply water to the city and county of San Francisco and its inhabitants, along and beneath certain land occupied by the tracks of one of the plaintiffs, upon a consideration that the defendants' predecessors would construct and maintain a hydrant at a certain point on the line and allow the railroad (one of the plaintiffs) ''the free use of water therefrom for fire and station and all other railroad purposes.'' The agreement did not specify how long these water facilities should continue to be furnished. The hydrant was constructed and the railroad company used the water to supply a tank from which it used such water as it from time to time needed. The Spring Valley Water Company eventually notified the railroad company that unless it would thereafter pay a reasonable charge for the water supplied it would cut off the service Whereupon plaintiffs instituted an action to enjoin the water company from cutting off the connection to its main and the tank or depriving the plaintiffs of the water. The Supreme Court granted the injunction and held that the instrument was, in legal effect, in the nature of an exchange, the grant of a right of way for the water conduit by the railroad company to the waterworks, and a grant by the waterworks to the railroad of a water right consisting of a right to take a part of the water flowing in the conduit, by means of the connecting pipe, as needed and that the water right was a burden or servitude upon the pipe line and water system of the waterworks, a right to a part of its water. The court further held that the respective rights of the parties were indefinite and unlimited as to time, but they were not necessarily perpetual; that there was no covenant or agreement by the waterworks to lay the pipe line or to carry water therein, or to maintain either the pipe line or the flow of water therein

for any period of time or at all; that its only agreement was that after it had laid the conduit, and when it did carry water in it, the plaintiff should have free use of that water for the purposes designated and that as long as it maintained the route given, the right of plaintiffs was a burden or servitude thereon which entitled them to take and use water from the main to the quantity necessary for the purposes specified. It was further held that the agreement involved was subject to revision in the public interest by the railroad commission; that the courts can only declare and enforce the rights as they exist; that until some order to the contrary was made by the commission, the plaintiffs were entitled to the use of the water as provided in the agreement. There is nothing in this case indicating that it would have been incompetent for the parties, had they so desired, to have made a contract perpetually binding on both of them subject to the authority of the railroad commission.

In the instant case the contract indicates that the intention of the parties was to provide for a permanent rather than a temporary water service. The contract expressly provides that the realty company or its successors in interest ''shall at all times have the right to take water for use upon the land known as Del Mar Terrace.'' It clearly appears from the language used in the contract here involved that it was the intention of the parties that the water was to be used on the Del Mar Terrace subdivision by persons building and maintaining residences thereon and that the city, by agreeing to give them the right to use such water, ''at all times'' for use thereon, was granting a permanent right to such use. Furthermore, the city furnished water under this contract for many years without objection and the charges for such service were paid by the residents of the Del Mar Terrace.

In *City of Coronado* v. *City of San Diego*, 60 Cal.App.2d 395 [140 P.2d 881], and 48 Cal.App.2d 160 [119 P.2d 359], the city of San Diego entered into an agreement providing for permanent service to water consumers in the city of Coronado and while the city of San Diego took over an existing water system subject to the burden of supplying such service, the contract by the city of San Diego was held to be enforceable. ■ We hold, therefore, that the city of San Diego had authority to enter into a contract providing for permanent service of water to property owners in the Del Mar Terrace subdivision.

■ Appellant's next contention is that a contract should

be construed so as to give effect to every part thereof. The rule is as stated by appellant. ██ However, a contract entered into between a governmental body and an individual is to be construed by the same rules which apply to the construction of contracts between private persons, and in construing a contract, the primary object is to ascertain and give effect to the intention of the parties as it existed at the time of contracting. (*Oberg* v. *City of Los Angeles,* 132 Cal. App.2d 151, 158 [281 P.2d 591].) ██ The intention of the parties must, in the first instance, be derived from the language of the contract. ██ The words, phrases and sentences employed are to be construed in the light of the expressed objectives and fundamental purposes of the parties to the agreement. (*Hensler* v. *City of Los Angeles,* 124 Cal. App.2d 71, 77-78 [268 P.2d 12].) In *M. F. Kemper Const. Co.* v. *City of Los Angeles,* 37 Cal.2d 696, 704 [235 P.2d 7]. it is held that the California cases uniformly refuse to apply special rules of law simply because a governmental body is a party to a contract.

Appellant argues that the contract must be construed to mean that only the owners of lots crossed by the pipe line were entitled to water service upon their respective lots. This argument is refuted by the plain and express provision of the contract that the right was given to take use upon the land known as Del Mar Terrace and the trial court's interpretation of the contract in that respect is supported by the record.

Appellant further contends that the city officers cannot impose a burden on the city water system adverse to the interests of the residents of the city and in this connection relies upon *Southern Pac. Co.* v. *Spring Valley W. Co.,* 173 Cal. 291, 297, *supra.* We have commented upon this case in connection with appellant's contention that the city had no power to enter into the contract and further comment thereon is unnecessary.

Appellant further argues that the Del Mar Terrace Public Utility District is not entitled to have the size of the present taps or meters increased. The trial court found that "The quantity of water obtainable through the present three two inch (2″) taps or meters, is entirely inadequate to meet the requirements of the lot owners and residents of said Del Mar Terrace. The replacement of the existing two (2) inch tap or meter on Laurel Street with a four (4) inch tap or meter is presently necessary to meet the reasonable requirements of

the lot owners of said subdivision." This finding is supported by substantial evidence and cannot be here disturbed.

██ ██ Finally, it is argued by the city that the doctrine of estoppel is not applicable to it under the evidence. This argument is not persuasive. The evidence shows that the city since the year 1920 has supplied water through taps installed by it with knowledge that the water was being applied to domestic and other uses to supply the homes constructed within the subdivision. The city officials also knew that year after year additional homes were being constructed in the subdivision, which homes were dependent upon the water supplied by the city and the size of the taps were increased by the city to accommodate this new construction. In this connection the trial court concluded that "The city is by its conduct over the many years preceding the time when this controversy arose, estopped from claiming a right to terminate or discontinue service or delivery of water to owners of lands in the subdivision known as Del Mar Terrace." Whether or not the doctrine of estoppel is applicable is a question of fact unless but one inference can be drawn from the evidence. (*Cruise* v. *City & County of San Francisco,* 101 Cal.App.2d 558, 562 [225 P.2d 988]; *Goldstein* v. *McNeil,* 122 Cal.App.2d 608, 612 [265 P.2d 113]; *Krobitzsch* v. *Middleton,* 72 Cal.App.2d 804, 815 [165 P.2d 729].) The trial court's finding in this connection is also supported by substantial evidence. ██ The doctrine of estoppel will be applied against governmental bodies where justice and right require it. (*Lorenson* v. *City of Los Angeles,* 41 Cal. 2d 334, 340 [260 P.2d 49]; *Farrell* v. *County of Placer,* 23 Cal.2d 624, 627-628 [145 P.2d 570, 153 A.L.R. 323]; *Baird* v. *City of Fresno,* 97 Cal.App.2d 336, 342 [217 P.2d 681]; *Mendibles* v. *City of San Diego,* 100 Cal.App.2d 502, 506 [224 P.2d 42].) In *City of Coronado* v. *City of San Diego,* 48 Cal.App.2d 160, 172, *supra,* the doctrine of estoppel was applied against the city of San Diego where it acquiesced for many years in the taking of water under contract and a new agreement and consideration of settling other litigation was entered into modifying the original contract. This court there held that the city was estopped to insist upon a different interpretation of the new contract.

Respondents state in their brief that "Plaintiffs do not claim any 'preferential' right but plaintiffs do claim the right under the contract to participate jointly with the people of San Diego in the Lake Hodges-San Dieguito River supply

so long as the supply of water lasts. If defendant's supply of water from that source should fail, for any reason beyond the City's control, that technically would excuse performance by the City." The judgment herein should be construed accordingly. There is no showing in the record that there was any water shortage of this nature at the time of trial and our opinion herein is based upon the record before us and the conditions existing at the time the action was tried. We are not here holding that the contract involved may be enforced under any and all circumstances which may arise in the future and which might excuse the city from performance in full or in part.

The judgment is affirmed.

Barnard, P. J., and Griffin, J., concurred.

A petition for a rehearing was denied February 20, 1956.